Filed 10/3/13  In re D.C. CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re D. C., et al., Persons Coming Under the Juvenile Court Law. | B246044 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>SALVADOR C.,<br><br>        Defendant and Appellant. | (Los Angeles County Super. Ct. No. CK94306) |

APPEAL from orders of the Superior Court of Los Angeles County.  Marilyn Mordetzky, Referee.  Affirmed.

Joseph T. Tavano, under appointment by the Court of Appeal, for Appellant Salvador C.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, Melinda A. Green, Senior Associate County Counsel, Attorneys for Respondent.

_____

Salvador C. appeals from the juvenile court's jurisdictional order declaring his minor sons, D. and Mitchell, dependents of the juvenile court pursuant to Welfare and Institutions Code section 300, subdivision (d).[1] He also appeals from the juvenile court's dispositional order removing both boys from his custody pursuant to section 361, subdivision (c)(1). We affirm the orders.

## FACTS

Salvador (father) is the father of D., born in 2001, and Mitchell, born in 2005. In July 2012, father shared a house with his children, his wife, Janet, his sister-in-law, Martha, her husband, and their two daughters, Brittany, age 9, and B.J., age 6.

In August 2012, the Los Angeles County Department of Children and Family Services (DCFS) received a report of sexual abuse. On July 18, 2012, Janet, D., and Mitchell had returned home from church and were eating a meal in the kitchen. After finishing her meal, Janet went into her bedroom to get a pair of shoes. The bedroom did not have a door, only a curtain in the doorway. When she entered the bedroom, she saw father with his shirt rolled up and B.J. facing father with her back to Janet. Father looked startled and quickly pulled his shirt down in front of his crotch area. Although his shorts were not pulled down, he appeared to be covering his penis with his shirt. B.J. then ran out of the room. Janet asked him what he was doing. He did not reply and exited the house. She followed him outside and continued to inquire what he had been doing with B.J. She told him that he should leave if he was in trouble. Father then left in his car.

Janet told B.J.'s parents about the sexual abuse incident and they called the police. B.J. told police father had put his penis into her mouth during the incident. She also said he had touched her vagina over her clothing and put all of his fingers inside her vagina and had been doing this almost every day since she was five years old. Father would do this to her in his bedroom, his sons' room, and outside. This often occurred while others were around the house. She said she had never told anyone because she was scared to tell and father had told her not to tell anyone. She said she finally told someone "because he

---

**1** All further section references are to the Welfare and Institutions Code.

would never stop." B.J. said she was scared of father and terrified that he would come back to her home. D. and Mitchell never saw father abuse B.J. and had no knowledge of the abuse until the proceedings. They both stated that father never touched their private parts or abused them in any way.

During an interview with police, father admitted putting his penis in B.J.'s mouth during the incident, but he claimed B.J. had wanted to see his penis and put it in her mouth. He claimed this was the first time he had done so. However, he also stated B.J. had been touching his penis for approximately two months prior to the incident. He claimed it started when B.J. entered his room, refused to leave, and began rubbing his legs and penis on her own volition. He first denied ever touching B.J.'s vagina, but then admitted to doing so when confronted with the possibility of DNA testing. Father also admitted to exposing his penis to B.J. on one prior occasion.

This was not the first time father had been in trouble for sexual conduct with a female minor. In 2003, father approached his 14-year-old female neighbor and invited her out on a date. She told him she was not interested because he was married and had a child. Father continued to talk and flirt with the victim. He then grabbed her hand, bent over, and kissed the victim's cheek. The victim moved away from father, and he left the area. After a few minutes, father returned and sat down next to the victim on the staircase to her apartment building. He asked her out again but was unsuccessful. After asking the victim whether she would get mad at him, he grabbed her around the neck with both hands and bit the victim's upper and lower lips, causing them to swell and bleed. During this incident, father rubbed the victim's chest outside of her blouse. The victim pushed him away. She began to cry uncontrollably and told father to leave her alone. Father left the victim, only to return twice more to try to speak with her. Both times the victim told him to leave her alone. Multiple witnesses corroborated the victim's story. Father claimed he did not attack the victim as she claimed. He stated he had kissed the victim on the lips and she had kissed him back.

## DISCUSSION

### I.     The Jurisdictional Order

Father argues there was insufficient evidence to support the juvenile court's jurisdictional finding that there was a substantial risk D. and Mitchell would be sexually abused based on father's sexual abuse of his niece.  We disagree.

Under section 300, subdivision (d), a child is within the jurisdiction of the juvenile court when "there is a substantial risk that the child will be sexually abused . . . by his or her parent or guardian or a member of his or her household."  Father argues that his actions toward B.J. do not pose a threat of abuse toward D. and Mitchell because there is no evidence he sexually abused his sons, and they were never aware of B.J.'s abuse.

Father claims there is a split of authority as to whether the sexual abuse of one child places other non-victim children in the home similarly at risk.  However, as DCFS correctly points out, a recent California Supreme Court case has settled this dispute. In *In re I.J.* (2013) 56 Cal.4th 766, the California Supreme Court held that a father's sexual abuse of his daughter could be used to show a substantial risk of abuse of his two sons even "when there [was] no evidence the father sexually abused or otherwise mistreated the boys, and they were unaware of their sister's abuse before [the] proceeding began."  (*Id*. at p. 770.)  In that case, the father had sexually abused his daughter over the course of three years, including by raping her.  However, there was no evidence that the father had ever sexually abused his two sons, and the sons were not aware of their sister's abuse prior to the proceedings.  The court held that, despite the fact that the father's other daughter was at greater risk than his sons, "this does not mean the risk to the sons is nonexistent or so insubstantial that the juvenile court may not take steps to protect the sons from that risk."  (*Id*. at p. 780.)  The court held that the father posed a substantial risk to all of the children, in part because the sexual abuse of his daughter occurred "while the other children were living in the same home and could easily have learned of or even interrupted the abuse."  (*Id*. at p. 768.)

This case is analogous. Father sexually abused his niece almost every day since she was five years old. He sexually abused her in the house he shared with his family, including outside the home, in his sons' bedroom, and in a bedroom without a door. Additionally, this abuse often occurred while the family was home. Similar to *In re I.J.*, D. and Mitchell could easily have interrupted this abuse. Their gender or lack of exposure to abuse does not negate the risk posed by living in the presence of their abusive father, who refused to take responsibility for his actions and attempted to blame the sexual encounters on the desires of a six year old. There is sufficient evidence to support the juvenile court's finding that D. and Mitchell were at substantial risk of being abused while living with father. As such, we find no error by the juvenile court.

## II. The Dispositional Order

Father also argues there was insufficient evidence to support the juvenile court's dispositional order removing custody of D. and Mitchell because there was no clear and convincing evidence they were as risk of being sexually abused unless removed from father's custody. We disagree.

In general, a parent may not challenge the sufficiency of evidence supporting a dispositional order if he or she did not raise the issue in the dependency court. (*In re N.M.* (2011) 197 Cal.App.4th 159, 166; *In re David H.* (2008) 165 Cal.App.4th 1626, 1640.) Here, father did not raise his objection to the juvenile court's dispositional below. Therefore, we find that he has forfeited this claim.

Even if father has not forfeited this claim, we still find that the juvenile court had substantial evidence to justify the removal from father's custody. Under section 361, subdivision (c)(1), a dependent child may not be taken from the physical custody of the parents with whom the child resides at the time the petition was initiated unless the juvenile court finds clear and convincing evidence "[t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parents . . . physical custody." (§ 361, subd. (c)(1).) On appeal, we look to see

whether there was substantial evidence to support a finding of risk and the absence of alternative means to protect the children.  (*In re Henry V.* (2004) 119 Cal.App.4th 522, 529.)  In undertaking this review, "[t]he jurisdictional findings are prima facie evidence that the child cannot safely remain in the home.  (§ 361, subd. (c)(1).)"  (*In re Cole C.* (2009) 174 Cal.App.4th 900, 917.)

Here, we find there was substantial evidence to show D. and Mitchell were at risk of sexual abuse unless they were removed from father's custody.  The juvenile found a significant risk of harm under section 300, subdivision (d).  As noted, father abused his niece in his family's home while others were present in the house.  Although father never abused D. or Mitchell, and they were never exposed to B.J.'s abuse, the juvenile court reasonably concluded that father's abuse of B.J. in close proximity to his sons created a substantial risk of harm to them that would continue as long as they were in his custody.  We find no error in the juvenile court's dispositional orders.

## DISPOSITION

The orders are affirmed.


BIGELOW, P. J.

We concur:


FLIER, J.



GRIMES, J.


6