[No. D058672. Fourth Dist., Div. One. June 10, 2011.]

In re N.M., a Person Coming Under the Juvenile Court Law.
SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY,
Plaintiff and Respondent, v.
KEVIN M., Defendant and Appellant.

## Counsel

Andrea R. St. Julian, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel, and Sujata N. Shah, Deputy County Counsel, for Plaintiff and Respondent.

Lelah Forrey-Baker, under appointment by the Court of Appeal, for Minor.

## Opinion

**HUFFMAN, J.**—Kevin M. appeals the jurisdictional and dispositional orders of the juvenile court adjudging his daughter, N.M., a dependent child under Welfare and Institutions Code section 300, subdivision (a),[1] and removing N.M. from his parental custody pursuant to section 361, subdivision (c)(1). Kevin contends substantial evidence does not support the jurisdictional finding and the dispositional orders. Kevin also contends the court erred by refusing to implement a voluntary case plan rather than declaring N.M. a dependent child.

### FACTS

On April 23, 2010, Kevin drove N.M., then 11 years old, to school. After getting out of Kevin's pickup truck, N.M. reached into the cargo area for her

---

[1] Statutory references are to the Welfare and Institutions Code unless otherwise specified.

backpack. While she was doing so, Kevin started to drive away. N.M. and an adult at the school yelled at Kevin to stop, but Kevin did not hear them. The truck went over the curb, and N.M. feared the truck would run over her foot. The truck did not run over N.M.'s foot and she was not injured. When Kevin stopped the truck, he was confronted by the adult who had yelled as she witnessed the incident. Kevin told her to mind her own business. The incident was reported to the San Diego County Health and Human Services Agency (Agency).

During an interview with a social worker, N.M. said Kevin had physically punished her several times. N.M. said two months earlier, Kevin had hit her five to six times with an iron pipe, leaving marks on her leg that were still visible. N.M. said the previous November Kevin had hit her with a broom and left marks on her ribs and hand. N.M. told the social worker that her father only punished her when she deserved it; she knew she deserved it because Kevin and his roommate had told her that she deserved the punishment. (N.M. refers to Kevin's roommate as her "stepmom.") N.M. also said Kevin was usually under the influence of alcohol when he punished her. N.M. said she wanted to stay at Polinsky Children's Center (PCC) because she was afraid if she went home Kevin would hit her.

The social worker made an unannounced visit to the family home on the day of the incident and interviewed Kevin. The social worker noted Kevin was cooperative and the home was clean and well stocked with food for N.M. N.M.'s room was "well furnished and it is obvious that her material needs are met adequately." Kevin told the social worker that even though he could not hear or see N.M. when she was reaching into the back of the truck, his daughter was never in any danger. Kevin initially denied using physical punishment on N.M., but later admitted he spanked her a few times. When the social worker offered Kevin a safety plan, which, among other things, mandated no corporal punishment, he refused to sign the plan because he believed it would be an admission of guilt.

The social worker also interviewed N.M.'s babysitter since she was six months old, who said she had not suspected abuse. The babysitter said N.M. was a good girl, who did not misbehave or lie. She also said Kevin always acted appropriately.

During an examination and interview by the PCC medical staff, N.M. said the physical abuse allegations she made against Kevin were untrue. The examination revealed "nonspecific" scars that "would be consistent [with] [N.M.'s] initial history." The medical staff reported N.M. was in good health.

On April 27, 2010, Agency filed a dependency petition on behalf of N.M. pursuant to section 300, subdivision (a). The petition alleged: "COUNT 1: On

or about and between November 2009 to present the child's father, KEVIN [M.], subjected the child to serious physical harm and the substantial risk thereof, including but not limited to, excessive discipline and physical abuse and damage, to wit, the father hit and kicked the child in the head, in November 2009 hit her with a broom leaving marks, in February 2010 hit the child with a pipe causing bruising, and in April 2010 this child attempted to retrieve a backpack from the father's car, became caught up on or in the car, and the father started to drive away anyway. The mother is serving a prison sentence for causing the death of another child and has been unable to protect the child from the father and the child has suffered and there is substantial risk the child will suffer serious physical harm inflicted non-accidentally."

Kevin did not attend the detention hearing; the juvenile court ordered N.M. detained at PCC or a foster home. N.M. has been living in a licensed foster home since April 30, 2010.

For the jurisdiction and disposition hearing, Agency recommended the court make a true finding, remove N.M. from Kevin's care and custody, declare N.M. a dependent of the court and offer Kevin reunification services. N.M., who was living in a foster home, continued to say she did not want to return to the family home because of the physical abuse. N.M. told the social worker that she had lied to the PCC doctor when she recanted because she was afraid. Kevin and N.M. were having weekly supervised visits, which went well.

On October 8, the parties reached a settlement before the scheduled contested jurisdictional/dispositional hearing. The section 300, subdivision (a), dependency petition was amended to read: "COUNT 1: On or about and between November 2009 to present the child's father, KEVIN [M.], subjected the child to serious physical harm and the substantial risk thereof, including but not limited to, excessive discipline and physical abuse and damage, to wit, ~~the father hit and kicked the child in the head, in November 2009 hit her with a broom leaving marks, in February 2010 hit the child with a pipe causing bruising, and~~ in April 2010 this child attempted to retrieve a backpack from the father's car, became caught up on or in the car, and the father started to drive away anyway. The mother is serving a prison sentence for causing the death of another child and has been unable to protect the child from the father and the child has suffered and there is substantial risk the child will suffer serious physical harm inflicted non-accidentally."

In amending the petition, Agency's counsel stated: "The understanding is with that stricken that the father would deal with any physical abuse issues in therapy . . . . It's part of the negation . . . ." Kevin submitted the jurisdictional

matter to the juvenile court on the amended petition.[2] The court, by clear and convincing evidence, sustained the amended section 300, subdivision (a) petition.

As to disposition, Kevin's counsel asked the court not to declare N.M. a dependent child and to allow Kevin to participate in a voluntary case plan. The court denied the request and followed Agency's recommendations. The court declared N.M. a dependent child, ordered her placed in a licensed foster home and ordered reunification services for Kevin.[3]

## DISCUSSION

### I

Kevin contends there was insufficient evidence to support the jurisdictional finding that N.M. came within the provisions of section 300, subdivision (a).

 Section 300, subdivision (a), provides that jurisdiction may be assumed if the child has suffered, or there is a substantial risk the child will suffer, serious physical harm inflicted nonaccidentally by the child's parent.[4] The court need not wait until a child is seriously abused or injured to assume jurisdiction and take steps necessary to protect the child. (*In re Michael S.* (1981) 127 Cal.App.3d 348, 357–358 [179 Cal.Rptr. 546], superseded by statute on another point as stated in *In re Kristin H.* (1996) 46 Cal.App.4th 1635, 1664–1666 [54 Cal.Rptr.2d 722]; *In re Luwanna S.* (1973) 31 Cal.App.3d 112, 114–115 [107 Cal.Rptr. 62].) The court may consider past events in deciding whether a child presently needs the court's protection. (*In re Diamond H.* (2000) 82 Cal.App.4th 1127, 1136 [98 Cal.Rptr.2d 715],

---

[2] The waiver effectively submitted the jurisdiction issue to the court to be determined on the basis of the social worker's reports.

[3] The court denied reunification services to N.M.'s mother, who gave birth to N.M. while she was incarcerated. The mother is serving a 25-year-to-life prison term for assaulting her nephew with force likely to produce great bodily injury, resulting in his death. (Pen. Code, § 273ab, subd. (a).) The mother is not a party to this appeal.

[4] Section 300, subdivision (a) reads: "Any child who comes within any of the following descriptions is within the jurisdiction of the juvenile court which may adjudge that person to be a dependent child of the court: [¶] (a) The child has suffered, or there is a substantial risk that the child will suffer, serious physical harm inflicted nonaccidentally upon the child by the child's parent or guardian. For the purposes of this subdivision, a court may find there is a substantial risk of serious future injury based on the manner in which a less serious injury was inflicted, a history of repeated inflictions of injuries on the child or the child's siblings, or a combination of these and other actions by the parent or guardian which indicate the child is at risk of serious physical harm. For purposes of this subdivision, 'serious physical harm' does not include reasonable and age-appropriate spanking to the buttocks where there is no evidence of serious physical injury."

disapproved on another ground in *Renee J. v. Superior Court* (2001) 26 Cal.4th 735, 748, fn. 6 [110 Cal.Rptr.2d 828, 28 P.3d 876]; see also *In re Petra B.* (1989) 216 Cal.App.3d 1163, 1169 [265 Cal.Rptr. 342].)

*Sufficiency of the Petition*

To the extent that Kevin is arguing this case does not merit jurisdiction under section 300, subdivision (a), because the April 23, 2010, incident was accidental and the amended petition was stripped of language setting forth any incidents of physical abuse (see fn. 4, *ante*), he cannot prevail.

■ Kevin cannot challenge the sufficiency of the allegations in a dependency petition on appeal if he did not first raise the issue below. It is well settled that attacks on the legal sufficiency of a petition cannot be made for the first time on appeal. (*In re S. O.* (2002) 103 Cal.App.4th 453, 459–460 [126 Cal.Rptr.2d 554].) Kevin did not challenge the sufficiency of the amended petition below and has forfeited such an argument at the appellate level.

Moreover, we note the striking of language directly referring to the November 2009 broom incident and the February 2010 pipe incident was the result of negotiations aimed toward (1) eliminating the need for N.M. to testify at the contested hearing, (2) satisfying Kevin's adamant refusal to admit any action that had possible criminal exposure, and (3) bringing about the provision of services to N.M. and Kevin. We see no reason to allow an individual to negotiate a settlement and then challenge the agreed-upon language for the first time on appeal.

Further, even if Kevin had not forfeited his right to challenge the sufficiency of the amended petition on appeal, such a challenge before us would be moot. "[I]f the jurisdictional findings are supported by substantial evidence, the adequacy of the petition is irrelevant." (*In re Athena P.* (2002) 103 Cal.App.4th 617, 626 [127 Cal.Rptr.2d 46].)[5]

*Sufficiency of the Evidence*

Again, Agency raises a forfeiture argument, which we address initially.

■ If a parent does not contest jurisdiction, he or she has three options. "The parent or guardian may [(1)] elect to admit the allegations of the petition, [(2)] plead no contest, or [(3)] submit the jurisdictional determination to the court based on the information provided to the court and waive further jurisdictional hearing." (Cal. Rules of Court, rule 5.682(e).)

---

[5] The provision of adequate notice of the allegations has not been an issue in this case.

An admission that the allegations of a section 300 petition are true, as well as a plea of no contest to a section 300 petition, bars the parent from bringing an appeal to challenge the sufficiency of the evidence supporting the jurisdictional allegations. (*In re Troy Z.* (1992) 3 Cal.4th 1170, 1180–1181 [13 Cal.Rptr.2d 724, 840 P.2d 266]; see also *In re Andrew A.* (2010) 183 Cal.App.4th 1518, 1526 [108 Cal.Rptr.3d 268].) However, when a parent submits the jurisdictional issue to be determined by the juvenile court solely on the basis of the social worker's report, the parent does not waive his or her right to challenge the sufficiency of the evidence to support the court's jurisdictional finding. (*In re Tommy E.* (1992) 7 Cal.App.4th 1234, 1237–1238 [9 Cal.Rptr.2d 402].) Such a submission requires the court to weigh evidence, make evidentiary findings and apply relevant law before making its jurisdictional finding. (*Id.* at p. 1237.) This is to be distinguished from submitting the dispositional issue based on the social worker's recommendation, which precludes the parent from challenging the evidence to support the dispositional order because the parent has acquiesced to the recommendation. (*In re Richard K.* (1994) 25 Cal.App.4th 580, 589–590 [30 Cal.Rptr.2d 575].)

Although *In re Tommy E., supra,* 7 Cal.App.4th 1234, was in the same procedural mode as this case, there is an additional wrinkle here—the settlement negotiations undertaken to avoid a trial. Under the settlement, Kevin admitted to the acts set forth in the amended petition and agreed to address the physical acts of abuse that were stricken from the original dependency petition in therapy. Kevin's agreement to deal with the physical abuse issue in therapy is akin to an admission because otherwise there would be no need for therapy if the juvenile court was not going to take jurisdiction of the case. The negotiated settlement was essentially a contract; both Agency and Kevin were entitled to enforcement of the terms of their agreement. Kevin, having received the benefits of the settlement, is precluded from attempting to better the settlement on appeal. By accepting the negotiated settlement—and its benefits—Kevin implicitly waived his right to challenge the true finding under section 300, subdivision (a). (See *People v. Hester* (2000) 22 Cal.4th 290, 295 [92 Cal.Rptr.2d 641, 992 P.2d 569].)

The case of *People v. Hester, supra,* 22 Cal.4th 290, is instructive. In *Hester*, the defendant pleaded no contest to five substantive counts and a personal use allegation in return for a stipulated four-year sentence. (*Id.* at p. 293.) The court sentenced him to the stipulated four-year prison term with concurrent three-year terms for two other felonies and concurrent jail terms for misdemeanor counts. On appeal, Hester argued the sentence was unauthorized, contending that the sentencing court should have stayed a concurrent three-year term pursuant to Penal Code section 654, which bars multiple punishments for a single act or indivisible course of conduct. (*Hester*, at p. 294.) The *Hester* court rejected the claim, concluding that although a defendant may challenge an unauthorized sentence on appeal even if he failed

to object below, that principle is inapplicable where the defendant pleaded guilty in return for a specified sentence. In such circumstances, "appellate courts will not find error even though the trial court acted in excess of jurisdiction in reaching that figure, so long as the trial court did not lack *fundamental* jurisdiction. The rationale behind this policy is that defendants who have received the benefit of their bargain should not be allowed to trifle with the courts by attempting to better the bargain through the appellate process." (*Id.* at p. 295.)

In light of his agreement to the negotiated settlement, Kevin's attempt to challenge the sufficiency of the evidence to support the jurisdictional finding for the first time on appeal seems like he is trying to have the best of both worlds. To allow Kevin to appeal the jurisdictional finding under these circumstances is counterintuitive to legal principles of forfeiture and waiver, which are based on maxims of jurisprudence. "He who consents to an act is not wronged by it." (Civ. Code, § 3515; see also Civ. Code, § 3516 ["Acquiescence in error takes away the right of objecting to it."].) Under the particular circumstances of the case, Kevin's agreement to the negotiated settlement constitutes an implied waiver of his right to appeal the sufficiency of the evidence to support the jurisdictional finding under section 300, subdivision (a). Any other result would undermine the stability promised by the Legislature to children in the dependency system.

Even if there was no forfeiture of the right to appeal the sufficiency of the evidence regarding jurisdiction, Kevin cannot prevail on such a claim.

In considering a claim of insufficient evidence to support a jurisdictional finding, we review the evidence most favorably to the court's order—drawing every reasonable inference and resolving all conflicts in favor of the prevailing party—to determine if it is supported by substantial evidence. (*In re Shelley J.* (1998) 68 Cal.App.4th 322, 329 [79 Cal.Rptr.2d 922].) If it is, we affirm the order even if other evidence supports a contrary conclusion. (*In re Baby Boy L.* (1994) 24 Cal.App.4th 596, 610 [29 Cal.Rptr.2d 654].)

■ We note that in dependency proceedings, the child welfare agency must prove by a preponderance of the evidence that the child who is the subject of the petition comes under the court's jurisdiction. (§ 355; *Cynthia D. v. Superior Court* (1993) 5 Cal.4th 242, 248 [19 Cal.Rptr.2d 698, 851 P.2d 1307]; *In re Amy M.* (1991) 232 Cal.App.3d 849, 859–860 [283 Cal.Rptr. 788].) On appeal, the parent has the burden of showing there is insufficient evidence to support the order. (*In re Geoffrey G.* (1979) 98 Cal.App.3d 412, 420 [159 Cal.Rptr. 460].)

The record contains sufficient evidence to sustain the dependency petition under section 300, subdivision (a). The social worker's report, which Kevin agreed would be the basis for the juvenile court's determination, indicates that Kevin had hit N.M. on numerous occasions, including a November 2009 incident in which he hit her in the ribs and on the back with a broom multiple times. As a result of this incident, N.M. had marks on her ribs and hands. There also was a February 2010 incident in which Kevin hit her with a pipe four to six times; N.M. showed the resultant marks on her leg to the social worker. On other occasions, Kevin had kicked N.M., hit her on the hand, which resulted in bleeding, and slapped her on the face with an open hand. Although N.M. recanted her accusations at one point, she later renewed them, explaining she was afraid at the time of the recantation. The most telling evidence was that a medical examination revealed marks on N.M.'s body that were consistent with her claims of abuse. From these incidents, the court reasonably could conclude the truck incident was not an isolated event but rather part of a pattern of physical abuse that warranted jurisdiction.

The evidence is sufficient for the juvenile court to have found, as it did, that for N.M. there was "a substantial risk that the child will suffer . . . serious physical harm inflicted nonaccidentally upon the child by the child's parent." (§ 300, subd. (a).)

## II

Kevin contends the evidence was insufficient to support the dispositional order.[6] The contention is without merit.

After the juvenile court finds a child to be within its jurisdiction, the court must conduct a dispositional hearing. (*Cynthia D. v. Superior Court, supra,* 5 Cal.4th at p. 248.) At the dispositional hearing, the court must decide where the child will live while under the court's supervision. (*In re Michael D.* (1996) 51 Cal.App.4th 1074, 1082 [59 Cal.Rptr.2d 575].)

A removal order is proper if based on proof of parental inability to provide proper care for the child and proof of a potential detriment to the child if he or she remains with the parent. (*In re Jeannette S.* (1979) 94 Cal.App.3d 52, 60 [156 Cal.Rptr. 262].) "The parent need not be dangerous

---

[6] Among other things, Kevin argues that if the evidence was insufficient as to jurisdiction, as he claims, then it must also be insufficient as to disposition. Appellate counsel writes: "It follows that where there are no facts upon which a petition can be sustained then there can be no facts on which to base disposition. Thus, a finding of disposition without the benefit of any supporting facts is a due process violation requiring reversal of the disposition order." Inasmuch as we have found, on the merits, that substantial evidence supported the jurisdictional finding (pt. I, *ante*), Kevin's argument fails.

and the minor need not have been actually harmed before removal is appropriate. The focus of the statute is on averting harm to the child." (*In re Diamond H., supra*, 82 Cal.App.4th at p. 1136.) The court may consider a parent's past conduct as well as present circumstances. (*In re Troy D.* (1989) 215 Cal.App.3d 889, 900 [263 Cal.Rptr. 869].)

Before the court issues a removal order, it must find the child's welfare requires removal because of a substantial danger, or risk of danger, to the child's physical health if he or she is returned home, and there are no reasonable alternatives to protect the child. (*In re Kristin H., supra*, 46 Cal.App.4th at p. 1654; § 361, subd. (c)(1).) There must be clear and convincing evidence that removal is the only way to protect the child. (See, e.g., *Cynthia D. v. Superior Court, supra*, 5 Cal.4th at p. 248.)

Whether the conditions in the home present a risk of harm to the child is a factual issue. Again, we apply the substantial evidence test. (*In re Kristin H., supra*, 46 Cal.App.4th at p. 1654.)

█ Substantial evidence supports the juvenile court's decision that removing N.M. from Kevin's custody was necessary to protect her from a continuing risk of physical abuse. In addition to the evidence supporting the jurisdictional finding, the court reasonably could rely on evidence that Kevin had not grasped the danger of the truck incident and was in denial regarding the reported incidents of physical abuse. A medical examination showed marks on N.M.'s body consistent with her claims of physical abuse. N.M. also said her "stepmom" closed the windows when Kevin hit her so neighbors would not hear her cries and screams. N.M. continued to be afraid to return home until Kevin took classes and learned how not to hit her anymore. At the time of the dispositional hearing, Kevin had only begun to participate in services, and it was too early to tell if he was making progress.

We find the removal order is amply supported by evidence that there was a substantial risk of danger to N.M.'s safety if she were returned to Kevin's custody at the dispositional hearing.

## III

Kevin contends the juvenile court erred when it declared N.M. a dependent child because there was an available lesser alternative to dependency— namely, ordering Agency to provide family maintenance services under section 360, subdivision (b). We disagree.

 Once the juvenile court finds jurisdiction under section 300, it must adjudicate the child a dependent unless the severity of the case warrants nothing more than Agency's supervision of family maintenance services. Under section 360, subdivision (b), if appropriate, the court may, without adjudicating the child a dependent, order that services be provided to keep the family together under the informal supervision of the child welfare agency. (§§ 360, subd. (b), 301; Cal. Rules of Court, rule 5.695(a)(2).)

Whether to exercise this option under section 360, subdivision (b), is a discretionary call for the juvenile court to make; it may opt to do so, but it need not. "The court has broad discretion to determine what would best serve and protect the child's interest and to fashion a dispositional order in accord with this discretion." (*In re Christopher H.* (1996) 50 Cal.App.4th 1001, 1006 [57 Cal.Rptr.2d 861].) As an appellate court, we cannot reverse the court's dispositional order absent a clear abuse of discretion. (*Ibid.*) A court exceeds the limits of legal discretion if its determination is arbitrary, capricious or patently absurd. The appropriate test is whether the court exceeded the bounds of reason. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318–319 [27 Cal.Rptr.2d 595, 867 P.2d 706].)

 We find no abuse of discretion. The record here amply supports the juvenile court's determination that formal supervision was appropriate. The court had legitimate concerns for N.M.'s ongoing physical and emotional well-being. The court commented that both N.M. and Kevin needed services and formal supervision. Further, as minor's counsel pointed out, a formal reunification plan would provide monitoring of Kevin's and N.M.'s participation in the services and reporting of their progress while a voluntary case plan would not. Although there was evidence that Kevin was largely cooperative and had started services before the joint jurisdictional and dispositional hearing, the potential for recurrence of the abuse remained. A primary purpose of the juvenile law is protection of the child. (*In re Nicole B.* (1979) 93 Cal.App.3d 874, 879–880 [155 Cal.Rptr. 916].) In deciding whether to remove a child from home, the child's best interests are paramount. (*In re Corey A.* (1991) 227 Cal.App.3d 339, 346–347 [277 Cal.Rptr. 782].)

Finally, we note it is of no moment that Agency initially offered Kevin a voluntary case plan. At the dispositional hearing, the juvenile court was by no means bound by Agency's earlier action. The court independently concluded that formal supervision was warranted in this case. There was no abuse of discretion.

The court properly declared N.M. a dependent of the court and ordered reunification services.

## DISPOSITION

The orders are affirmed.

Benke, Acting P. J., and Nares, J., concurred.

A petition for a rehearing was denied August 2, 2011, and appellant's petition for review by the Supreme Court was denied September 28, 2011, S195757. Kennard, J., was of the opinion that the petition should be granted.