Filed 2/13/14  In re J.S. CA1/5

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| **In re J.S. et al., Persons Coming Under the Juvenile Court Law.** | |
| **MARIN COUNTY HEALTH AND HUMAN SERVICES,**<br><br>    **Plaintiff and Respondent,**<br><br>v.<br><br>**KATHERINE S.,**<br><br>    **Defendant and Appellant.** | **A138506**<br><br>**(Marin County Super. Ct. Nos. JV25654A, JV25655A)** |

Katherine S. (Mother) appeals from dispositional orders regarding her twin children, J.S. and K.S. (collectively Minors).  She argues the juvenile court erred in adjudicating Minors dependents under Welfare and Institutions Code section 300[1] and that it abused its discretion by failing to order a program of informal supervision.  She further contests the juvenile court's dispositional orders, contending the court erred in removing Minors from her custody and in ordering supervised visitation.

We reject Mother's challenges to the jurisdictional findings and conclude the juvenile court did not abuse its discretion in refusing to order informal supervision.  As

---

[1] All undesignated statutory references are to the Welfare and Institutions Code.

1

we explain below, subsequent events have rendered Mother's other challenges to the dispositional order moot. We therefore will not address those arguments.

FACTUAL AND PROCEDURAL BACKGROUND

Minors were born in 2009. During her pregnancy, Mother began using prescription medications for back pain, use that continued throughout these dependency proceedings. The Marin County Department of Health and Human Services (the Department) filed the original dependency petition in this case in August 2012. At the initial hearing, the juvenile court ordered family maintenance services for Mother, with Minors continuing to reside with her at a shelter in San Rafael. At the October 10, 2012 jurisdictional hearing, the juvenile court sustained the petition and set a dispositional hearing.

While the family was receiving services, the Department received three more referrals. The referrals alleged Mother had left Minors unsupervised in the residence and in a van. In addition, a referral reported drug activity in Mother's home, and although Mother agreed to submit to urine testing on several occasions, she did not request those tests when she visited the clinic.

Finally, a referral on December 10, 2012, reported that Mother was asleep and could not be roused for an unknown length of time while Minors were in her care. Minors attempted to wake Mother but could not do so. Minors unlocked the front door of their residence and called a shelter staff member who found Minors naked, their bodies covered in ink from coloring markers. The staff member also could not awaken Mother for several minutes. Mother finally awoke but seemed dazed, and she wandered around the room aimlessly, teetering from side to side as the staff member bathed and dressed Minors. According to the staff member, the room was "totally trashed." The staff also witnessed an adult male leaving Mother's apartment prior to noticing that Minors were not in the school located at the shelter site.

The police were called and Mother was arrested for child endangerment. Minors were taken into protective custody. Among Mother's belongings, the shelter staff found two "meth pipes" with residue, marijuana, vodka, and approximately 20 bottles of

2

prescription medications, many of which were empty. Minors could easily have accessed these items. J.S. reported that "Andrew" hit K.S. on the head, and both Minors reported that they and Andrew had covered their bodies with markers.

The Department filed a first amended petition on December 12, 2012, requesting that the court detain Minors. The court did so pending Mother's release from jail. The following day, the Department filed a subsequent petition under section 342.[2] It alleged Minors were at substantial risk of harm because of Mother's inability to provide regular care for them due to her substance abuse. Mother submitted on the report, and the juvenile court ordered Minors further detained.

On December 14, Mother was using drugs in a park in San Rafael, where she was arrested for possession of controlled substances (methamphetamine, drug paraphernalia, and marijuana). Mother tested positive for methamphetamine, told police at prebooking that she was a regular user of the drug, and had used the drug that very day.

The Department's jurisdictional report on the subsequent petition recommended that the court take jurisdiction of Minors and set a dispositional hearing. The Department explained that despite services, Minors were still at risk of suffering serious physical harm. At the jurisdictional hearing, Mother submitted on the section 342 petition and the court sustained the petition as amended by the parties. The court ordered supervised visitation twice a week, an order to which Mother did not object.

In its February 4, 2013 dispositional report, the Department recommended that the juvenile court continue its jurisdiction and that Mother receive six months of family reunification services. While the report noted that Mother had begun to make progress in substance abuse treatment after initially denying any addiction or abuse, the

---

[2] Section 342 provides: "In any case in which a minor has been found to be a person described by Section 300 and the petitioner alleges new facts or circumstances, other than those under which the original petition was sustained, sufficient to state that the minor is a person described in Section 300, the petitioner shall file a subsequent petition. This section does not apply if the jurisdiction of the juvenile court has been terminated prior to the new allegations. [¶] All procedures and hearings required for an original petition are applicable to a subsequent petition filed under this section."

3

Department's view was that continued out-of-home placement was in Minors' best interest. The social worker wrote that Mother's position in treatment demonstrated progress, but it was precarious because it was a recent change. Mother had spent months denying her substance abuse problems and avoiding requests for urine tests. The report concluded that Mother needed to demonstrate substantial progress over time, which would "then . . . support positive judgment in her parenting and supervision of her children."

At the contested dispositional hearing, the social worker testified about her concerns with Mother's continuing struggle with substance abuse. The social worker explained that Mother's behavior indicated substance abuse remained a problem and that Mother had not made substantial progress in addressing her addiction. The social worker believed it was too early to return Minors to Mother's care. The social worker expressed further concerns about Mother's compliance with her treatment program and her failure to consult with her substance abuse counselor before starting to take the prescription medication Adderall. In addition, the social worker stated Mother was making inappropriate comments about the dependency case in front of her children, telling the social worker "it's about time you give me my children back." The social worker opined this was harmful to Minors.

At the conclusion of the dispositional hearing on April 10, 2013, the juvenile court noted Mother's 25-year history of substance abuse, her arrest leading to Minors' removal, her missed treatment sessions and a positive drug test, as well as her discussions of the case in front of Minors. The court noted Mother was beginning to address her substance abuse, but it explained more progress in intensive treatment was necessary, including attending all meetings, testing clean on all tests, and being consistent in treatment recovery. It found clear and convincing evidence that the risk of serious harm to Minors required continued out-of-home placement and that it was premature to return Minors to Mother. The court ordered supervised visitation, but explained that with progress, Mother could move to unsupervised visits. It adopted the findings and orders submitted by the social worker.

Mother filed timely notices of appeal on April 23, 2013.

DISCUSSION

Mother first challenges the juvenile court's finding of jurisdiction, and she argues the juvenile court should have exercised its discretion to order a program of informal supervision rather than out-of-home placement and supervised visitation. She also challenges the dispositional order, arguing the juvenile court erred in ordering Minors' removal from her custody and supervised visitation. We sustain the juvenile court's jurisdictional findings, and we conclude Mother's other challenges to the dispositional order have been rendered moot.

I. *The Juvenile Court Did Not Abuse its Discretion in Refusing to Order Informal Supervision.*

Mother first argues clear and convincing evidence did not support the juvenile court's adjudication of dependency. We begin by noting that while Mother raises this claim in an argument heading, she does not develop the argument in her brief, and we would be justified in considering it forfeited. (*In re Daniel M.* (2003) 110 Cal.App.4th 703, 708 [issue forfeited because party "develops no argument and cites no supporting legal authority for this proposition"].) Moreover, Mother misunderstands the burden of proof at the jurisdictional phase of the case. The Department was not required to produce clear and convincing evidence that Minors were persons described in section 300. To the contrary, under section 355, subdivision (a), only "[p]roof by a preponderance of evidence must be adduced to support a finding that the minor is a person described by Section 300."

The Department certainly met this burden. The Department's original jurisdiction report explained that the Department had received nine referrals involving Mother and Minors. The Department substantiated allegations of general neglect, and it reported that Minors' father had been arrested due to an incident of domestic violence against Mother. A social worker observed that Mother left Minors alone in their apartment with cigarette lighters scattered on the floor. The California Highway Patrol had stopped Mother twice in one day because she was driving Minors without securing them in their car seats. The

5

Department's jurisdiction report on the subsequent petition recounted Mother's December 14, 2012 arrest for possession of controlled substances, and it noted that two "meth pipes" had been found among Mother's possessions when she was arrested on December 10, 2012. The Department concluded Mother was continuing to struggle with addiction and was therefore unable to protect Minors from safety threats. Viewing this evidence, as we must, most favorably to the juvenile court's order, we conclude that its jurisdictional findings are supported by substantial evidence. (See *In re N.M.* (2011) 197 Cal.App.4th 159, 168.)

Although the heading of Mother's argument frames the issue as a challenge to the juvenile court's jurisdictional finding, Mother devotes most of this portion of her brief to a different argument—that the juvenile court abused its discretion in declining to order informal supervision under sections 301, subdivision (a) and 360, subdivision (b).[3] We agree that the juvenile court's decision not to order informal supervision under section 360, subdivision (b) is one we review for abuse of discretion. (See *In re N.M., supra,* 197 Cal.App.4th at p. 171.) "Whether to exercise this option under section 360, subdivision (b), is a discretionary call for the juvenile court to make; it *may* opt to do so, *but it need not*." (*Ibid*., italics added.) Here, we discern no abuse of discretion by the juvenile court.

As support for her argument, Mother quotes at length from the discussion of the informal supervision option contained in a leading treatise on California juvenile

---

[3] Section 301, subdivision (a) provides in relevant part: "In any case in which a social worker, after investigation of an application for petition or other investigation he or she is authorized to make, determines that a child is within the jurisdiction of the juvenile court or will probably soon be within that jurisdiction, the social worker may, in lieu of filing a petition or subsequent to dismissal of a petition already filed, and with consent of the child's parent or guardian, undertake a program of supervision of the child."

Section 360, subdivision (b) provides in relevant part: "If the court finds that the child is a person described by Section 300, it may, without adjudicating the child a dependent child of the court, order that services be provided to keep the family together and place the child and the child's parent or guardian under the supervision of the social worker for a time period consistent with Section 301."

6

dependency law.  (See Seiser & Kumli, Cal. Juvenile Courts Practice and Procedure (2013) § 2.123[2], pp. 2-333-2-334 (Seiser & Kumli).)  Mother's lengthy quotation, however, omits the following:  "An order at disposition for informal supervision is the exception, rather than the rule, and *it is the rare case in which this will be appropriate.* The court should not make such an order unless it finds the order is appropriate, sufficient to protect the child, and in the child's best interest."  (*Id.* at p. 2-333, italics added.)  Mother has not shown that this is one of the rare cases in which such an order would be appropriate.[4]

Mother's reliance on *In re Adam D.* (2010) 183 Cal.App.4th 1250 is likewise misplaced.  In that case, the Court of Appeal *affirmed* the juvenile court's decision to order informal supervision under section 360, subdivision (b).  (*Id.* at pp. 1261-1262.)  The juvenile court had determined the minor was subject to dependency jurisdiction and ordered informal supervision.  (*Id.* at p. 1257.)  After concluding that the juvenile court's jurisdictional findings were supported by substantial evidence, the Court of Appeal rejected the parents' claim that the findings and order for informal supervision amounted to a miscarriage of justice.  (*Id.* at pp. 1261-1262.)  In other words, the Court of Appeal found the juvenile court's order fell within the broad range of its discretion under the statute.  Nothing the in the Court of Appeal's opinion suggests a juvenile court would be *required* to order informal supervision in such a case.  (See *Mejia v. City of Los Angeles* (2007) 156 Cal.App.4th 151, 158 ["opinions affirming a discretionary ruling do not compel the conclusion that the ruling here was an abuse of discretion"].)

Much of Mother's argument is an improper attempt to reargue the facts that were before the juvenile court.  (See *James B. v. Superior Court* (1995) 35 Cal.App.4th 1014, 1021 ["The Court of Appeal is not a second trier of fact"].)  She describes at length her progress in substance abuse treatment and the efforts she was making to become a better

---

[4] To the extent Mother argues the juvenile court had no authority to oversee services or the family unless the matter was brought back before the court under section 360, subdivision (c), she proceeds from a false premise.  This is true only in cases in which informal supervision is ordered.  (Seiser & Kumli, *supra,* § 2.123[2], at p. 2-334.)  In this case, the juvenile court did not elect informal supervision.

7

parent to her children. But the juvenile court recognized Mother was making progress, and in fact it commended her efforts. Nevertheless, it found "that more progress in the intensive treatment program is necessary, including making all meetings, testing clean on all tests, and being consistent in whatever is requested in the treatment, as well as consistent in recovery." The court explained that Minors "must have a safe environment where an adult is present at all times, clean and sober." As a consequence, the juvenile court found that Mother's "primary focus at this time in her life should be recovery. It should not be intruded in or changed, that focus, in any way." The court did not expect Mother's recovery to take many more months; it simply believed it was premature to return Minors to Mother's custody.

In light of these findings, which are supported by the evidence, we cannot say the juvenile court abused its discretion.[5] (*In re N.M., supra,* 197 Cal.App.4th at p. 171 [affirming order for formal supervision despite parent's cooperation with agency and participation in services].) The juvenile court's primary goal must be to protect Minors from a substantial risk of harm, and it was well within its discretion in concluding that Mother's early progress in treatment was insufficient to alleviate its concerns about possible relapse and potential risk to Minors. (See *ibid.* [juvenile court could properly consider potential for recurrence of abuse in deciding to order formal supervision].)

II.    *Mother's Appeal of the Dispositional Orders Has Been Rendered Moot.*

Mother also argues it was error for the juvenile court to remove Minors from her custody. She claims removal was not supported by substantial evidence, and she "asks

---

[5] Indeed, in her opening brief, Mother acknowledges her substance abuse made her an incompetent parent. She also admits she has turned to drugs and alcohol during times of stress. At the hearing below, Mother also recognized she had relapsed in January by taking Klonopin.

In speaking with the social worker, Mother described her December 2012 arrest as a " 'wake up call' " and said she knew how to be sober. The Department recognized this as "a step forward in her recovery process," but it concluded that "[a] sustained period of sobriety, along with substantial progress in her treatment program is essential in mitigating any substantial risk of future harm to her children." Thus, as the juvenile court found, before Minors could be returned, Mother needed more time to demonstrate she would be able to maintain sobriety.

8

that this Court reverse those orders, and remand with orders to return [Minors] to [M]other's loving care, with family maintenance services as may be appropriate." In the alternative, Mother requests us to order at least unmonitored visitation, including weekend and/or overnight visits.

In its brief, the Department contends Mother's appeal of the dispositional orders is now moot. The Department has filed a request for judicial notice of a September 26, 2013 "Request to Change Court Order" (Judicial Council of California Form JV-180) the Department filed in the juvenile court. The Department represented that Mother had been in a residential treatment program, but "[o]n July 17th, 2013 [M]other and [Minors] left the program and have been residing together receiving [family maintenance] Services." The Department requested that the juvenile court "order that [Minors] have returned to . . . [Mother's] care and custody and that the family is receiving Family Maintenance services as of May 17, 2013." Mother agreed with the Department's request, and on September 30, 2013, the juvenile court granted it.

We will take judicial notice of the Department's request for change of order and the juvenile court's order granting that request. (Evid. Code, §§ 452, subd. (d), 459, subd. (a); *In re C.C.* (2009) 172 Cal.App.4th 1481, 1487, fn. 3; *In re Karen G.* (2004) 121 Cal.App.4th 1384, 1389-1390.) These documents demonstrate that Mother's challenges to the dispositional orders are moot. The juvenile court has already granted Mother the relief she seeks in her challenges to those orders—it has returned Minors to Mother's custody with family maintenance services. Moreover, Mother agreed with the Department's request for change of order below. As a consequence, Mother's challenges to the dispositional orders are now moot. (See *In re Dani R.* (2001) 89 Cal.App.4th 402, 406 [appeal moot where parents stipulated to visitation plan set forth in social services report; mother's appeal from denial of reunification services mooted by subsequent offer of services to mother].)

9

DISPOSITION

The orders from which the appeal is taken are affirmed.

_____
Jones, P.J.

We concur:

_____
Simons, J.

_____
Needham, J.