Filed 7/9/14  C.M. v. Super. Ct. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

| | |
|---|---|
| C.M, | |
| Petitioner, | E059748 |
| v. | (Super.Ct.No. RIJ113002) |
| THE SUPERIOR COURT OF RIVERSIDE COUNTY, | OPINION |
| Respondent; | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, | |
| Real Party in Interest. | |

ORIGINAL PROCEEDINGS; petition for extraordinary writ.  Tamara Wagner,

Temporary Judge.  (Pursuant to Cal. Const., art. VI, § 21.)  Petition denied

Valerie N. Lankford for Petitioner.

No appearance for Respondent.

Pamela J. Walls, County Counsel, Julie Koons Jarvi and Carol A. Nunes-Fong,

Deputy County Counsels, for Real Party in Interest.

1

Petitioner, the de facto parent of two children (the minors), seeks relief from the juvenile court's orders removing them from her home and terminating her designation as a prospective adoptive parent. She contends that the court abused its discretion because the removal order is not supported by the evidence. We disagree, and deny the petition.

FACTUAL AND PROCEDURAL BACKGROUND

Siblings, a boy (I.F.) and a girl (M.S.), were declared dependents in July 2011. Parental rights were terminated on January 10, 2013, with respect to both minors.

The minors were placed in the home of petitioner, a licensed foster caregiver and their prospective adoptive parent, from August 4, 2011 through December 2, 2011 and from January 3, 2012 to July 17, 2013. The minors were removed from petitioner's home for one month after one of petitioner's other foster children was bitten by the family dog for the second time in four months.

The children were again removed from petitioner's home on July 17, 2013, when the Riverside Department of Public Social Services (the department) determined that they had been placed in imminent danger because petitioner had allowed an unknown person to move into the home without a background check.

A social worker was assigned the case in August 2012 to oversee the adoption process. This adoption social worker reported that she had concerns about petitioner's ability to protect based on a long history of poor decision making that had placed her own children and foster children at risk. She recounted that petitioner's three biological children had been removed from her care for six months in 1990 because her husband

had sexually abused two of her daughters. The children were eventually returned to her care, although petitioner did not leave the relationship with her husband for over a year.

The social worker also related the circumstances about the removal of the foster children due to the dog bite incidents. She noted that petitioner's daughter was babysitting the foster children, including the minors that are the subject of this petition, even though the daughter had told petitioner she did not want to do this because she was not being paid enough and she was stressed out. Despite these complaints, petitioner continued for a time to have her daughter as the primary babysitter while she worked.

In October 2012, a departmental staff meeting took place because of the social worker's concerns. It was noted that the home environment was very chaotic with many people providing care to the minors and other foster children. Petitioner resided in the home with her two sons, four foster children, and toddler granddaughter. At this time, there was also a nanny coming in during the day who would bring her own young son. Petitioner was reporting problems with I.F.'s behavior. It was recommended that petitioner have more therapy. In addition, the social worker talked to her about no longer having foster children in the home in order to provide more stability and structure for I.F. and allow petitioner to spend more time with him.

Later in October 2012, the social worker checked with petitioner to find out how things were going in the home. Petitioner stated that she had decided to foster the minors only, and did not plan on caring for any other children. She also indicated that she restructured her home so that she is the only adult allowed to discipline the children. They also discussed I.F.'s problems, which included tantrums, low self-esteem, failure to

3

maintain school friendships, and staying focused in class. The social worker asked petitioner to ask I.F.'s therapist if he would benefit from a medication evaluation since he was struggling in school.

Petitioner's therapist reported to the social worker in November 2012 that the former had matured through her abusive background.

During an interview in March 2013, petitioner told the social worker that she had three new foster children in her home. When the social worker reminded her of their earlier discussion that she should not take in any more foster children during the adoption process, petitioner stated that she was unaware that she was not supposed to take in more children. She added that she could not say "no" to the agency, and the agency had assured her it would be a short-term situation. Petitioner did admit that the other foster children were too demanding and she hoped they would leave soon. She also admitted that she had less time for the minors, which was negatively affecting I.F.

During another meeting later in March, petitioner reported that I.F. was having tantrums with increasing frequency. He walked into petitioner's room without permission when the door was closed. He had attempted to touch the nanny's son's buttocks and had been touching himself more frequently. The social worker pointed out that the other foster children had been in petitioner's home for several months and that it is likely that the chaos in the home was causing I.F. some discomfort.

On June 21, 2013, petitioner told the social worker that her other three foster children were no longer in the home and this was causing her some financial difficulties. She also stated that her adult sons were going to be moving out to "punish her,"

4

explaining that they were tired of her doing foster care. She claimed she could not afford the rent of the home without the assistance of her sons or additional foster care funding. The social worker noted that she specifically told petitioner not to take in any roommates. She said that she had recently interviewed a homeless woman and her young daughter for possible roommates. The social worker responded that that would not be in the minors' best interest and that moving an unknown person into her home was risky. Further, this would only add to the chaos in the lives of these minor, and that I.F. in particular needed stability and structure. The social worker suggested that petitioner move into a smaller and more affordable home.

On July 17, the primary social worker discovered that petitioner had moved a roommate into the home, and that this person had not been fingerprinted or given a background check. The roommate had apparently been in the home several weeks and she was already causing problems due to her volatile behavior. I.F. was found in the roommate's room several times, and when petitioner confronted her that this was not allowed, the roommate screamed and yelled while the minors were present. I.F.'s behavior problems became more severe during this time, and he was now urinating on himself and masturbating.

The primary social worker discussed her concerns with petitioner's decision making, and the latter explained that she was forced into having a roommate by her landlord who put an ad on Craigslist. She felt she could not say no to her landlord because he was an authority figure. Petitioner also stated that she had no choice because she could not afford the rent on her own and had bad credit. With regard to having a

5

background check, petitioner stated that there was a grace period. Although she had been told on June 21 not to take in a roommate without a background check, petitioner believed the situation was different because the roommate was not homeless but was found on Craigslist.

The minors were removed from petitioner's home on July 17 and placed in an interim placement. The department filed a notice of emergency removal alleging that petitioner had allowed a person unknown to the agency to move into the home without a background check. It was also alleged that she had failed to protect I.F., who had been urinating on himself and masturbating.

On July 19, petitioner filed a request for prospective adoptive parent designation and an objection to removal. Both matters were set for hearing. The trial court ordered petitioner to have twice a week, supervised visitation.

At the conclusion of a visit on August 7, 2013, both minors separated from petitioner without distress. At the end of some visits, M.S. did cry. Petitioner appeared inconsistent in redirecting the children, and did not always intervene when M.S. screamed when she wanted something. On one occasion, petitioner was observed to pull on I.E.'s ear to get his attention.

Petitioner had audio taped at least two visits and this was contrary to rules that had been explained to her. She explained that she did this as protection against the adoption social worker. On another occasion, she audio taped M.S. in the bathroom during a supervised visit. She asked the minor if someone had touched her, and M.S. agreed,

claiming two children in the foster home touched her private area. M.S. was subsequently taken to a doctor's office for a follow up, and everything appeared normal.

The department concluded that an adoption home study would not be approved for petitioner and, instead, identified another potential adoptive family for the minors.

Petitioner testified that she has worked for the County of Riverside for 13 years; first as a corrections officer and then as a probation officer. She is currently a Senior Probation Officer. She has a bachelor's degree in criminal justice, a master's degree in psychology, and is currently working on a Ph.D. in psychology.

Following removal from petitioner's home, both minors did exceptionally well. The foster parents reported that they were "sweet, well-mannered and great kids," and neither displayed any troubling behaviors. In particular, I.F. had not touched himself inappropriately, masturbated, showed his private parts, or urinated on himself since he had been placed in the new foster home 34 days earlier.

Meanwhile, petitioner was decertified as a foster parent by the agency. The agency had twice been fined for allowing someone into her home who had not been fingerprinted. The first time a daycare provider did not submit to a timely live scan and the agency had been fined by community care licensing. Petitioner had been instructed regarding licensing regulations, but again allowed a person to move into her home without live scanning.

The juvenile court concluded after the trial that it would be detrimental to leave the minors in petitioner's care and it was in their best interests to be removed from her home. The court found petitioner not to be credible. It pointed out that she is well-

7

educated and has been a foster parent. "She has had the children removed before because of reasons of not having live scan. She knows the process. But when she sits up on the stand and testifies, she acts ignorant. . . . She doesn't know. I don't find her credible at all."

DISCUSSION

In 2005, the Legislature added subdivision (n) to Welfare and Institutions Code[1] section 366.26 in order to strengthen the juvenile court's oversight of removal of children from a caretaker's home after parental rights are terminated. "The juvenile court has the authority and responsibility to determine whether removal from the home of a prospective adoptive parent is in the child's best interests. (§ 366.26, subd. (n)(3)(B).) If a prospective adoptive parent objects to the child's removal from the home, the [a]gency must prove by a preponderance of the evidence that removal from the prospective adoptive parent is in the child's best interests . . . ." (*T.W. v. Superior Court* (2012) 203 Cal.App.4th 30, 45.)

The parties agree that we review a juvenile court's decision to terminate placement for abuse of discretion. (*In re N.M.* (2011) 197 Cal.App.4th 159, 171.) We must also review the juvenile court's findings to determine whether there is substantial evidence in the record to support them. In conducting this review, we do not reweigh the evidence, but defer to the juvenile court's findings of fact and assessment of the credibility of witnesses. (*T.W. v. Superior Court*, *supra*, 203 Cal.App.4th at p. 47.)

---

[1] Statutory references are to the Welfare and Institutions Code.

The juvenile court did not abuse its discretion. Its finding that it was in the minors' best interests to remove them from petitioner's care is supported by substantial evidence. Petitioner asserts that the social worker's testimony lacked credibility and that the juvenile court gave undue weight to it. She points to the fact that they fully supported petitioner's efforts to adopt the minors up until the roommate incident, and that they thereafter used this incident as a pretext for removal. We disagree with this characterization of the evidence. While it is true that the department continued to support petitioner's adoption efforts for some time, it is also true that petitioner's questionable actions had been a source of concern for a year prior to the removal. She repeatedly made poor decisions that created a chaotic home environment for these minors, causing emotional harm to them both, but especially to I.F. It is apparent that the department was initially willing to overlook petitioner's questionable decisions, until the roommate incident made it clear that she lacked the good judgment necessary to provide a safe and stable home for the minors. The roommate incident cannot be viewed in isolation but as the culmination of a series of inappropriate decisions by petitioner. The social workers' action to remove the minors at this point was fully warranted by legitimate concerns for the well being of the minors.

DISPOSITION

The petition is denied.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ
P. J.

We concur:

McKINSTER
J.

KING
J.

10