Filed 7/23/15  In re Camille V. CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| In re CAMILLE V., a Person Coming Under the Juvenile Court Law. | |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br> FABIAN V.,<br><br>    Defendant and Appellant. | B259907<br>(Los Angeles County<br>Super. Ct. No. DK07448) |

APPEAL from an order of the Superior Court of Los Angeles County, Timothy Saito, Judge.  Affirmed.

Jesse McGowan, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the County Counsel, Mark J. Saladino, County Counsel, Dawyn R. Harrison, Assistant County Counsel and Jeanette Cauble, Deputy County Counsel, for Plaintiff and Respondent.

Appellant Fabian V. appeals the juvenile court's order asserting jurisdiction over his child, Camille V., under Welfare and Institutions Code section 300, subdivision (b), based on a single incident of domestic violence.[1] We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

The Department of Children and Family Services (DCFS) become involved with the family in July 2014, when Mother alleged that her son Christian, then four, had accused Father of sexual abuse.[2] However, Christian did not repeat the accusation when examined by his physician or when questioned by police, and gave conflicting stories to his father, Rolando. When questioned by the caseworker, he stated only that Father had spanked him once with his hand. Christian's physician observed no evidence of sexual abuse after a physical exam. Mother, Father and other family members reported that Christian had recently begun fabricating events. The allegation was ultimately deemed "inconclusive."

In September 2014, while investigating the sexual abuse allegation, the caseworker learned that four months earlier, on May 9, 2014, Father had been arrested for an incident of domestic violence involving Mother.[3] According to the police report, he had hit Mother with the back of his hand while they were arguing about feeding Camille, leaving Mother with a bloody and swollen nose and a

---

[1] Undesignated statutory references are to the Welfare and Institutions Code. Camille's mother, Angelica B. (Mother) is not a party to this appeal.

[2] Christian's father is Rolando O.

[3] When initially interviewed by the caseworker, Mother had denied any history of domestic violence between herself and Father. Father did not mention the May 9 incident when asked if he had ever been arrested. When confronted with evidence of the police report, Mother initially denied that anything had happened and claimed she had called police just because she had been upset. After learning of the May 9 incident, the caseworker attempted to schedule a team decision meeting, but Mother and Father refused to cooperate.

laceration under her eye.[4]  Mother was fearful enough to call the police.  When they arrived, they saw blood on the floor of the kitchen and living room.  In addition, there were reports, confirmed by Rolando, that Mother had been the victim of domestic violence in a prior relationship.

At the September 19, 2014 detention hearing, the children were detained and placed with Rolando.  Prior to the jurisdictional and dispositional hearings, both parents admitted that the May 9 incident occurred as reported, but denied any other domestic violence.  Mother initially stated Camille was present, but subsequently said that both children were asleep in their bedrooms at the time of the incident.  Both parents blamed the May 9 incident on stress arising from the fact that Camille had been sick and had kept them up all night, Father was facing a final examination in one of his classes, and they were experiencing ongoing financial problems.  They took steps to alleviate the financial stress by moving in with the maternal grandparents, and Father changed his school program to a less accelerated one.  After the section 300 petition was filed, Father enrolled in counseling to address anger management, and Mother began attending a domestic violence class and participating in therapy.[5]

At the October 17, 2014 jurisdictional hearing, Mother and Father moved to dismiss the petition.  They were joined by the children's attorney.  The court denied the motion.  Mother testified Camille was not present during the incident of domestic violence.  She further testified it was the only time Father had ever hit her.

After the close of evidence, the children's attorney argued there was no evidence the single incident of domestic violence created a risk of serious harm to

---

[4]     Camille was one at the time.

[5]     Mother suffered from agoraphobia, anxiety and panic disorder.

the children. Mother and Father similarly argued that no risk to the children had been established. The court disagreed. Characterizing Father's violent outburst as "a very extreme reaction to daily life stressors," the court concluded the May 9 incident should be viewed as a serious episode, given the nature of the injuries ("lacerations [and a] bloody nose"), and the fact that Mother was sufficiently fearful to call for police intervention. The court further found that although there was no evidence of "a cycle of domestic violence," it appeared that the "stressors are ongoing and they haven't been properly addressed by Mother or Father." Although the parents were taking steps to address their problems, they had not been completely ameliorated. Based on these factors, the court found true that on May 9, 2014, Mother and Father "engaged in a violent altercation in the child Camille's presence," that Father "struck [Mother's] face with [his] hand causing [Mother] to sustain swelling and bleeding to [her] nose and a laceration under [her] right eye," that his actions endangered the children's physical health and safety and placed them at risk of physical harm, and that jurisdiction was warranted under subdivision (b) of section 300.[6] Immediately upon making its findings, the court indicated it was inclined to proceed under section 360, subdivision (b), pursuant to which a court may assert jurisdiction without declaring a child a dependent of the court.[7] The court thereafter released the children to their parents and ordered DCFS to provide supervision. Father appealed.

---

[6] The court dismissed an allegation under section 300, subdivision (a) (serious physical harm).

[7] Section 360, subdivision (b), provides: "[I]f the court finds that the child is a person described by Section 300, it may, without adjudicating the child a dependent child of the court, order that services be provided to keep the family together and place the child and child's parent or guardian under the supervision of the social worker . . . ." "'If the court agrees to or orders a program of informal supervision, it does not dismiss the dependency petition or otherwise set it aside. The true finding of jurisdiction remains." *(Fn. continued on next page.)*

4

## DISCUSSION

Father contends substantial evidence does not support the finding of jurisdiction under section 300, subdivision (b), and that the juvenile court erred in denying the parties' motion to dismiss. We disagree.

"In reviewing the jurisdictional findings . . . , we look to see if substantial evidence, contradicted or uncontradicted, supports them. [Citation.] In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court. [Citation.]" (*In re Heather A.* (1996) 52 Cal.App.4th 183, 193.) "We do not reweigh the evidence or exercise independent judgment . . . ." (*In re Matthew S.* (1988) 201 Cal.App.3d 315, 321.)

Jurisdiction under section 300, subdivision (b)(1) requires proof by a preponderance of the evidence that a child "has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child . . . ." As numerous courts have held, domestic violence against a spouse can support a finding of detriment to the children sufficient to support a section 300, subdivision (b) jurisdictional finding. (See, e.g., *In re T.V.* (2013) 217 Cal.App.4th 126, 134; *In re R.C.* (2012) 210 Cal.App.4th 930, 941; *In re E.B.*

---

(*In re Adam D.* (2010) 183 Cal.App.4th 1250, 1260.) However, "'the dispositional alternative of declaring the child a dependent . . . is not made.'" (*Ibid.*; see *In re N.M.* (2011) 197 Cal.App.4th 159, 171 ["Under section 360, subdivision (b), . . . the court may, without adjudicating the child a dependent, order that services be provided to keep the family together under the informal supervision of the child welfare agency."].)

In *In re Adam D.*, the court held that an order made pursuant to section 360, subdivision (b), should be deemed a "final judgment" for purposes of appeal, permitting issues pertinent to the jurisdictional findings to be addressed. (*In re Adam D., supra,* 183 Cal.App.4th at pp. 1260-1261.)

(2010) 184 Cal.App.4th 568, 576; *In re S.O.* (2002) 103 Cal.App.4th 453, 460-461; *In re Heather A.*, *supra*, 52 Cal.App.4th at p. 194.) Domestic violence in the household represents a failure to protect the children from the substantial risk of encountering the violence and suffering serious physical harm while it is occurring. (*In re Heather A.*, *supra*, at p. 194.) Moreover, "'children of these relationships appear more likely to experience physical harm from both parents than children of relationships without . . . abuse. . . . [E]ven if they are not physically harmed, children suffer enormously from simply witnessing the violence between their parents. . . . [¶] [And] children of abusive fathers are likely to be physically abused themselves.'" (*In re E.B.*, *supra*, 184 Cal.App.4th at p. 576; accord, *In re Sylvia R.* (1997) 55 Cal.App.4th 559, 562.)

Pointing out that assertion of jurisdiction under section 300, subdivision (b), requires proof that "circumstances at the time of the hearing subject the minor to the defined risk of harm" (*In re Rocco M.* (1991) 1 Cal.App.4th 814, 820, fn. 4, 824, italics deleted), Father contends the May 9 incident was an isolated event, unlikely to recur, and the court should have found accordingly. "In evaluating risk based upon a single episode of endangering conduct, a juvenile court should consider the nature of the conduct and all surrounding circumstances. It should also consider the present circumstances, which might include, among other things, evidence of the parent's current understanding of and attitude toward the past conduct that endangered a child, or participation in educational programs, or other steps taken, by the parent to address the problematic conduct in the interim . . . . The nature and circumstances of a single incident of harmful or potentially harmful conduct may be sufficient, in a particular case, to establish current risk depending upon present circumstances." (*In re J.N.* (2010) 181 Cal.App.4th 1010, 1025-1026; see *In re E.B.*, *supra*, 184 Cal.App.4th at p. 576 ["'[P]ast violent behavior in a relationship is "the best predictor of future violence."'"].)

6

Here, the juvenile court took the appropriate factors into account.  It considered the nature of the conduct and the surrounding circumstances, as well as the parents' participation in programs and the other steps taken to alleviate the troubling conduct by the time of the jurisdictional hearing.  It concluded that because of the seriousness of the conduct and the likelihood that the same or similar stressors that precipitated Father's assault would occur in the future, there was a danger of repetition.  This finding was supported by the evidence.  Father inflicted a serious injury on Mother, leaving her with a bloody nose and a laceration under her eye.  Both parents concealed the incident from the caseworker during initial interviews and later modified their accounts to minimize its seriousness.  Neither parent sought therapy or other ameliorative programs until after the Section 300 petition was filed.  Nor did they cooperate with DCFS in setting up informal services.  The stressors that caused the assault -- a sick child, a final exam, financial difficulties -- are not unusual.  Under these circumstances, the finding of jurisdiction under section 300, subdivision (b), was supported by substantial evidence.

**DISPOSITION**

The jurisdictional order is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

MANELLA, J.

We concur:

EPSTEIN, P. J.

WILLHITE, J.