Filed 10/28/15  In re Renee J. CA3

## NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

### (Sacramento)

----

| | |
|---|---|
| In re RENEE J., a Person Coming Under the Juvenile Court Law. | C078945 |
| | (Super. Ct. No. JD235719) |
| SACRAMENTO COUNTY DEPARTMENT OF HEALTH AND HUMAN SERVICES, | |
| Plaintiff and Respondent, | |
| v. | |
| R.T., | |
| Defendant and Appellant. | |

R.T. (mother) appeals from the juvenile court's jurisdictional finding that her teenaged daughter, Renee J. (the minor), had been sexually abused or was at risk of such abuse, contending no substantial evidence supports that finding. (Welf. & Inst. Code, §§ 300, 395.)[1]  We shall affirm.

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

1

## FACTUAL AND PROCEDURAL BACKGROUND

On February 20, 2015, the Sacramento County Department of Health and Human Services (the Department) filed a petition under section 300, subdivision (d), as to the 16-year-old minor, alleging that mother's live-in boyfriend, Darrell B., touched the minor at least three times over her vaginal area over her clothing in 2013, and grabbed the minor's buttocks over her clothing twice in 2014, and that mother knew or reasonably should have known of the sexual abuse but failed to protect the minor. The minor's biological father, R.J., was said to be living at an unknown address in Chicago.[2]

According to the detention report, the minor said that since the family moved from Minnesota five months before, Darrell B. had whispered in her ear questions like, "Have you ever had anyone stick their finger in you?" and "Have you ever had anyone eat you out?" She recorded his questions on her cell phone sometime in January 2015; the recording was provided to the Sacramento County Sheriff's Department.

The minor also said that Darrell B. had "molested" her and described the incidents recited in the section 300 petition. She said she had told her younger brother and some friends about the incidents, but not mother. She recently told the maternal grandmother, who confronted mother about it. She believed her sister also told the maternal grandmother that Darrell B. had molested her (the sister) when she was younger; the minor did not know whether anyone had told mother about that until now.

The minor said she would like to go home. Darrell B. had not molested her since the move to California, and she did not feel unsafe at home because she tried to stay out of the residence when he was there.

---

[2] R.J. has not made an appearance in this case. After the jurisdiction/disposition hearing, the juvenile court denied reunification services to him because his whereabouts were unknown.

Mother was initially upset because Darrell B. had been arrested. As of February 19, 2015, however, he was released from jail and had returned to the family residence. Mother wanted the minor back, and intended to have Darrell B. go back to Minnesota so that the minor could come home sooner.

According to mother, the maternal grandmother, who had been living with the family, did not get along with Darrell B. and " 'stirred up many problems' " for the family. Darrell B. denied ever being inappropriate with the minor or any of the other children. Mother admitted that Darrell B. spoke with the children about sex and birth control, and might have said something inappropriate to the minor, but she did not believe he had ever touched the children inappropriately. According to mother, the minor's older siblings denied any molestation; they confirmed this in a conference call with the social worker. Mother thought the maternal grandmother was making everything up because she was upset with the other family members.

The maternal grandmother, who had stayed with mother and her family since January 2015, stated that sometime last month Darrell B. slapped her on the buttocks. She asked the minor whether Darrell B., who had been saying and doing " 'odd things,' " had done anything inappropriate with her. The minor replied that he had molested her in the past, and in the past month he had whispered into the minor's ear "Have you ever had anyone stick their finger into you?" and "Have you ever had anyone eat you out?" Confronted with this information, mother did not believe it. One of the minor's adult siblings said Darrell B. had molested her since she was 10 years old, and she had told mother about it but mother did nothing. Because mother and the maternal grandmother had not been getting along, the maternal grandmother moved out on February 14, 2015. Having spoken daily with the minor, the maternal grandmother decided to contact law enforcement to get the minor out of the mother's environment.

The minor's four adult siblings all said Darrell B. had done nothing inappropriate to them and they did not know of anything he had supposedly done to the minor. Two of them believed the maternal grandmother had made up all the allegations. However, the siblings acknowledged that Darrell B. had spoken with the children in the family about sex and birth control.

There were no reported Child Protective Services (CPS) contacts with the family in Minnesota, or in California before the present.

At the initial hearing on February 23, 2015, the juvenile court ordered the minor detained and set a jurisdiction/disposition hearing for March 16, 2015.

The jurisdiction/disposition report, filed March 13, 2015, recommended out-of-home placement of the minor, with reunification services for mother.

Mother denied the charges of physical molestation by Darrell B. in 2013 and 2014, claiming that he was not living with her and the minor then. Mother had never heard anything about these charges until the police came. Furthermore, mother " 'kn[ew] the signs of abuse,' " and the minor was not abused. Mother would never allow anything like that to happen.

Mother admitted, however, that Darrell B. had made the remarks the minor recorded on her cell phone. After listening to the recording 10 or 20 times, mother noted that Darrell B. never said he would touch the minor inappropriately, and the "type of talk" on the recording was "normal" in mother's household: " 'We talk about sex in this house.' " This was necessary because the minor and "the other kids" watched pornography and did things on their cell phones that mother had no control over.

The day after mother listened to the recording, she gathered the minor, two of her siblings, Darrell B., and the maternal grandmother around the kitchen table to talk about it. Mother asked the minor why she had not said it made her uncomfortable when Darrell

4

B. was in her room making those remarks; the minor said she did not know. In mother's opinion, there was no way Darrell B. could have known it made the minor uncomfortable if she did not say so. Everyone apologized.

According to mother, Darrell B. asked the minor the questions captured on the recording because she was depressed, missing her boyfriend in Minnesota, and acting suicidal. Mother told the minor there were other boys out there and got birth control for her, but the minor said she did not want to have sex with anyone in California. Darrell B. offered to buy the minor a dildo and name it after the boyfriend.

Mother admitted Darrell B.'s remarks were " 'inappropriate,' " but added that " '[t]he allegations come from my mom . . . the instigator,' " who was " 'mad at him . . . about coffee.' " After Darrell B. was released from custody, he moved out of mother's residence. He and mother were no longer a couple because the minor came first and mother would do whatever it took to get her back home.[3]

Mother claimed that during her childhood, the maternal grandmother used drugs, engaged in domestic violence with various men, physically abused mother, and failed to protect her from sexual abuse by her stepfather. Mother claimed she and the minor's father had had a violent relationship during their marriage, which ended by divorce in 2006. Formerly employed as a certified nursing assistant, mother was now on disability from injuries incurred as a result of domestic violence. Mother and Darrell B. had known each other for 11 years, but were separated a couple of times, including 2013 to 2014, when he was married to someone else. They resumed their relationship when she moved back to California in 2014. She wanted to get the minor back and to return to Minnesota.

---

[3] Mother showed the social worker her bedroom and bedroom closet. There were clothes in the closet that looked like they could have been men's clothing, but mother said they were hers.

5

The minor now said the alleged physical molestation never happened: " 'My grandma paid me to say all this. I was mad at my mom and her boyfriend. My grandma said she would pay me $100.00 if I said this happened.' " The minor was mad at mother because mother refused to turn the minor's phone back on.

The minor said Darrell B. did say the things on the recording and had said similar things in the past, which made her uncomfortable. She had heard him the day before giving her little brother a talk about sex, telling him to use condoms.

The minor gave the recording to the maternal grandmother, but was mad at her for calling the police. The minor said Darrell B. was " 'cool. We would all sit at the table and crack jokes. Then my grandma came and fucked it all up. My grandma takes the little things and makes them big. She made our house divided, and now everyone is mad at everyone.' "

The minor had wanted to go live with the maternal grandmother. Now she wanted to go back home; she missed mother's cooking and talking to her little brother. She had been accepted by a Job Corps program where she could obtain her high school diploma and obtain training as a medical assistant, and placement there was pending.

According to the police report of February 18, 2015, the maternal grandmother gave law enforcement the minor's cell phone to listen to the recording. One officer heard a male voice whispering approximately five times: " 'Renee, have you ever had your pussy eaten?' "

When the officers went to mother's residence to gather information, mother and Darrell B. said repeatedly that "the entire situation was made up by the maternal grandmother, because she was kicked out of their apartment."

6

The minor told the officers this was not the first time Darrell B. had said inappropriate things to her and made her uncomfortable. She denied, however, that he had touched her inappropriately, and wanted to know who had alleged that.

Darrell B. told the officers he had never touched the minor or suggested to her that they have sex. She was like his own daughter. He had told her, however, that if she missed her boyfriend in Minnesota, she should " 'play with herself' " and that he would buy her a dildo for Christmas. When the officers played the recording, he " 'began to hesitate,' " then admitted he had said those things, " 'but I did not mean for *me* to eat her pussy.' " He was booked on charges of annoying or molesting a minor.

Mother told the officers she had listened to the recording and had told Darrell B. he was " 'out of pocket [*sic*] for having that kind of conversation because he shouldn't have done that.' " However, mother had checked with all her children to make sure he had never done anything inappropriate with them, and they all told her he had never touched them. Mother blamed the current trouble on the maternal grandmother.

The maternal grandmother told the social worker that she was an abused child and knew the signs of abuse; the minor was not the first child she had helped with such problems. She denied giving the minor any money and insisted the minor told her to call the police. She said that when the family discussed the recording at the kitchen table, one of the minor's adult siblings, participating on speakerphone, accused Darrell B. of molesting her at the age of 10, and added that she had told mother at the time and mother had not helped.[4] A male adult sibling hit Darrell B. in the face after hearing the recording, saying, " 'Man, you trying to fool with my sister!' "

---

[4] The social worker attempted to contact that sibling, but the listed telephone number was disconnected.

7

The social worker concluded that the minor was at "very high risk" of further sexual abuse in mother's custody.

Despite mother's and the minor's denial of Darrell B.'s alleged sexual abuse in 2013 and 2014 (the § 300, subd. d-1 allegations), and mother's claim that she and Darrell B. were separated during that period, mother admitted he had stayed with the minor and another sibling in an adult sibling's apartment in Minnesota for a week in September 2014, and that the maternal grandmother told her the minor said Darrell was " 'touching on her and fiddling with her.' " Darrell B.'s recorded remarks to the minor were undisputed, and the minor told the police that that was not the first time he had said such things to her.

As for mother's alleged failure to protect the minor (the § 300, subd. d-2 allegations), mother asserted it was "normal" to have " 'a sex talk with your kids,' " and rationalized Darrell B.'s remarks to the minor on the ground that he was responding to her depression over being separated from her boyfriend. Mother also blamed the minor for not telling Darrell B. that his remarks made her uncomfortable, and believed it was not his responsibility to realize that without being told.

An addendum report recommended placement in the Job Corps residential program.

At the jurisdiction/disposition hearing on April 6, 2015, mother objected to jurisdiction. Her counsel asserted that Darrell B.'s admitted remarks to the minor did not in themselves constitute sexual abuse or lead to a substantial risk of sexual abuse, and that only the maternal grandmother now alleged inappropriate touching by Darrell B.

The juvenile court found as follows:

"I have reviewed both the detention report and the jurisdiction report, and I am aware that Renee indicates in the jurisdiction report that she fabricated the allegations of

8

abuse because of influence by her grandmother, but I believe the version of events as she related in the detention report are—I find by a preponderance of the evidence that those are the versions that are true in this case.

"The conduct of the boyfriend and the comments that he made to Renee as well as the comments made over the telephone support the Court's belief that the conduct originally described by Renee are true. And that is that there wouldn't—I believed Renee when she told those things to the author of the report in the detention report. There would not be any reason in the Court's mind for her to fabricate those but maintain that . . . the comments that he made to her, which she recorded and which there does not seem to be a dispute about, occurred.

"I also find that the mother knew or reasonably should have known that the abuse was occurring and failed to provide adequate care and protection, because Renee told her, and they had a conversation about it. But it seems that the mother normalizes the boyfriend's behavior and communication, which I think is denying adequate care and protection.

"So I do find by a preponderance of the evidence that the allegations set forth in the petition are true, and I will sustain them at this time. And find that Renee is a person described by . . . Section 300[, subd. ](d).

"I also find an injury or detrimental condition sustained by Renee is of a nature as would ordinarily not be sustained except as a result of the unreasonable or neglectful acts or omission of her mother . . . who has the care or custody of her."

The juvenile court ordered the minor removed from mother's custody and placed with the Job Corps residential program, with reunification services for mother.

## DISCUSSION

Mother contends the juvenile court erred reversibly by sustaining the allegations of the section 300 petition because no substantial evidence supported the allegations. We disagree.

Section 300, subdivision (d) provides a basis for jurisdiction if "[t]he child has been sexually abused, or there is a substantial risk that the child will be sexually abused, as defined in Section 11165.1 of the Penal Code, by his or her parent or guardian or a member of his or her household, or the parent or guardian has failed to adequately protect the child from sexual abuse when the parent or guardian knew or reasonably should have known that the child was in danger of sexual abuse."

The Department had to prove by a preponderance of the evidence in the juvenile court that the minor came under the court's jurisdiction. (*In re N.M.* (2011) 197 Cal.App.4th 159, 168.) On appeal, the parent must show the evidence is insufficient to support the jurisdictional findings. (*Ibid.*)

We review a challenge to the sufficiency of the evidence to support a jurisdictional finding under the substantial evidence standard, resolving all evidentiary disputes in favor of the court's rulings and drawing all reasonable inferences to support them. (*In re Alexis E.* (2009) 171 Cal.App.4th 438, 450-451.) "Weighing evidence, assessing credibility, and resolving conflicts in evidence and in the inferences to be drawn from evidence are the domain of the trial court, not the reviewing court." (*Id.* at p. 451.)

Reviewing the evidence in this case under that standard, the juvenile court's findings were amply supported. At the time of the detention report, the minor described all of the abusive conduct alleged in the petition, even though she later changed her story as to the alleged physical abuse. On that point, the maternal grandmother consistently stated that the minor had told both her and mother about Darrell B.'s physical molestation, and mother had done nothing to protect the minor. As the juvenile court

10

found, there was no apparent reason for the minor to invent one charge while speaking truthfully about another. It made more sense to infer (as the court evidently did) that under emotional pressure from mother and other family members, the minor later chose to recant as much of her story as she could—i.e., that which was not independently corroborated—and to side with the rest of the family against the maternal grandmother, who had been cast out by the others.

Moreover, the juvenile court could reasonably credit the maternal grandmother's account where it conflicted with those of others. Although the maternal grandmother might have had a bias or a motive to fabricate, so too, obviously, might mother and the others who disputed the maternal grandmother's charges. And the credibility of mother and Darrell B. was undermined by their initial denial of any wrongdoing whatsoever on his part. In any event, it is not for us to reweigh the juvenile court's credibility findings. (*In re Alexis E.*, *supra*, 171 Cal.App.4th at p. 451.)

Finally, mother's nonchalance about Darrell B.'s vile comments, her denial of charges against him when confronted by the minor, the maternal grandmother, and at least one of the minor's siblings, and her attempt to throw blame on the minor for not telling Darrell B. that his conduct made her uncomfortable, was strong evidence that mother had failed to protect the minor from Darrell B.'s abusive conduct in the past, and would probably fail to do so again if he ever again had proximity to the minor.

In arguing to the contrary, mother omits any quotation or paraphrase of the juvenile court's factual findings, which is almost enough to forfeit her insufficient evidence argument. (See *Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881.) To show the evidence is insufficient to support a ruling, an appellant must squarely confront the evidence relied on by the lower court and show why it is insufficient.

11

Aside from that defect, mother's argument fails because it asks us to reweigh the evidence in her favor and to redecide the credibility of the parties. When performing substantial evidence review, we may not do so.

Mother has shown no grounds for reversal.

## DISPOSITION

The jurisdictional findings and orders are affirmed.


       BUTZ      , J.


We concur:


    BLEASE   , Acting P. J.


    ROBIE    , J.