Filed 7/26/21 In re E.H. CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA
## SECOND APPELLATE DISTRICT
## DIVISION TWO

| | |
|---|---|
| In re E.H., a Person Coming Under the Juvenile Court Law. | B309962 (Los Angeles County Super. Ct. No. 20CCJP04883A) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. JOHNNY H., Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Peter R. Navarro, Judge Pro Tempore. Affirmed.

1

Emily Uhre, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, Veronica Randazzo, Deputy County Counsel for Plaintiff and Respondent.

In this juvenile dependency case, the juvenile court declared seven-month-old E.H. (son) a dependent of the court and removed him from the custody of both parents. On appeal, Johnny H. (father) claims there is insufficient evidence to support the removal order.[1] We affirm.

## BACKGROUND

### 1. Events Preceding Dependency Proceedings

Son was born in May 2020. He is the only child of father and mother. Son was three months old in September 2020, when respondent Los Angeles County Department of Children and Family Services (Department) received a referral that mother had used drugs and hit father in front of son. At the time, father and mother were no longer in a relationship; father had moved out of the family home.

The Department investigated the referral allegations at the family home on September 14, 2020. Son was found lying on the bed where drug paraphernalia was present. He appeared "healthy and thriving." Police were also at the home. During a search of the home, officers recovered methamphetamine and additional drug paraphernalia.

---

[1] Evelyn M. (mother) is not a party to this appeal.

Mother admitted having used methamphetamine earlier that day. Mother reported that she and father used methamphetamine and heroin together. She stated that father was in and out of prison, and was recently arrested for selling drugs to undercover police. Mother said their relationship involved domestic violence, but most disagreements were verbal. Mother denied having contact information for father. She disclosed father was living with paternal grandmother.

Later that day, a Department social worker telephoned father at paternal grandmother's home. During the phone call, father acknowledged he was son's father. He had recently moved out of the family home because of issues with mother. Father admitted the couple argued, but he denied any physical altercations. Father had not seen mother using drugs, but he was suspicious, having noticed drug paraphernalia in the home. Father did not think mother was capable of properly caring for son. Father denied using drugs or engaging in drug sales, although he confirmed having been recently arrested for selling drugs. Father said he was released and not convicted. Father said he currently worked as a fitness instructor and wanted custody of son.

The police arrested mother for child endangerment. The Department took son into protective custody and placed him in the paternal grandmother's care after father agreed to leave her home.

## 2. Dependency Petition and Detention Hearing

On September 16, 2020, the Department filed a three-count petition under Welfare and Institutions Code[2] section 300, subdivision (b) on behalf of son. Count b-1 alleged mother's illicit drug abuse interfered with her ability to provide regular care and supervision of son. Count b-2 alleged father had a history of illicit drug abuse, was a current user of heroin and methamphetamine, and his illicit drug use interfered with his ability to provide regular care and supervision of son. Count b-3 alleged mother created a detrimental and endangering home environment for son because of accessible drug paraphernalia and was arrested for child endangerment.

At the September 21, 2020 detention hearing, the juvenile court found father was son's presumed father. The court made a prima facie finding that son was a person described by section 300. The court ordered him detained from mother and father and to remain placed with paternal grandmother. The court permitted father to return to paternal grandmother's home on condition he submit to drug testing and continually test negative for drugs. Any positive tests would require father to move out of paternal grandmother's home. The court further ordered father's visits to be monitored if they occurred outside paternal grandmother's home.

## 3. First-Amended Dependency Petition

On October 2, 2020, the Department filed a first-amended section 300 petition. Counts a-1 and b-4 alleged the parents' history of domestic violence, including two incidents of father

---

[2] Undesignated statutory references are to the Welfare and Institutions Code.

4

striking mother, placed son at risk of severe physical and emotional harm. Amended count b-2 added father's September 8, 2020 arrest for "sales of Adderall/possession for sale/conspiracy."

At the detention hearing on the amended petition, father entered a general denial. The previously ordered out-of-home placement for son remained in effect.

## 4. The Jurisdiction and Disposition Report

According to the jurisdiction/disposition report, father's criminal record consisted of three burglaries, two shoplifts, and on September 8, 2020, transportation of a controlled substance, possession of a controlled substance for sale, and conspiracy to commit a crime. (It is unclear whether this information reflected arrests and/or convictions.) Other than her recent arrest for child endangerment, mother had no criminal record.

### A. *Alleged Domestic Violence (a-1 and b-4)*

Mother stated father once struck her with a cleaning bottle when son was present. On another occasion, he slapped her face and spat on her. Father denied both incidents and claimed he never " 'touched her with malicious intent.' "

### B. *Mother's Alleged Drug Abuse (b-1 and b-3)*

Paternal grandmother reported that on or about September 27, 2020, mother appeared for a monitored visit with son. Mother was combative and under the influence of drugs. Mother took son and refused to return him. The police were called, and son was returned to paternal grandmother.

### C. *Father's Alleged Drug Abuse (b-2)*

Mother stated father used Fentanyl and injected steroids. Father denied mother's allegation of steroid use and the Department's allegations of heroin and methamphetamine use. Father stated he was in an outpatient (substance abuse) program

5

two years earlier and had attended 12-step meetings until the pandemic.

Father told a Department social worker that he had submitted to one drug test. The social worker reminded father that a missed or positive test meant father could not visit son in paternal grandmother's home. Father stated the day before he had used a small amount of marijuana. The social worker requested a drug test on-demand for father. As of September 23, 2020, the Department could not find drug test results for father. At some point father told a social worker, " 'I think for the sake of the court and peace of all around me, I am willing to submit to drug tests.' "

As for father's September 8, 2020 arrest, police reported he had agreed to sell Adderall to an undercover officer in a parking lot in response to a Craigslist advertisement. The officer found Adderall in the car after father and a female passenger were detained. Father acknowledged he was sitting in a parked car with his girlfriend. Father stated he was holding money and her Adderall, but no sale occurred. When he and the girlfriend began to drive away, " 'the police lights came on.' "

Father's case plan included weekly random or on demand drug/alcohol testing, a parenting class, individual therapy, a substance abuse rehabilitation program, and a 12-step program.

### 5.    Jurisdiction Hearing

The jurisdiction hearing was held on October 20, 2020. Father waived his appearance. Mother testified on her own behalf. As pertinent here, it was mother's testimony that the Department and the police found the drug paraphernalia in father's room and the recovered syringes belonged to father, not to her.

6

At the conclusion of the jurisdiction hearing, the juvenile court dismissed for insufficient evidence counts a-1 and b-4, alleging domestic violence between the parents, and count b-2 alleging father's illicit drug use.  The court conformed counts b-1 and b-3 according to proof and sustained the counts as amended. With respect to father, b-1 was amended to read:  "The father . . . knew of mother's drug use and failed to protect the child.  On prior occasions, the mother was under the influence of illicit drugs while the child was in the mother's care and supervision. The child is of such young age requiring constant care and supervision and the mother's illicit drug use interferes with providing regular care and supervision of the child.  The mother's use of illicit drugs and the father's failure to protect endangers the child's physical health and safety and creates a detrimental home environment, placing the child at risk of serious physical harm and damage."

The juvenile court amended b-3 to read:  "[M]other . . . created a detrimental and endangering home environment for the child in that Law Enforcement found drug paraphernalia including drug pipe and needles in the child's home within access of the child.  Father knew of the environment created by mother and failed to protect the child from exposure to this environment. Such a detrimental and endangering home environment established for the child by the mother together with the father's failure to protect, endangers the child's physical health, safety and well-being and places the child at risk of serious physical harm and damage."

## 6. Disposition Hearing

After two continuances, the disposition hearing was held on December 2, 2020.  The juvenile court admitted into evidence the

Department's detention report, jurisdiction/disposition report and last-minute information reports dated November 20 and December 2, 2020. The November 20, 2020 report indicated father had failed to appear for drug tests on September 16, October 8, October 15, October 23, October 29, and October 30, 2020. On September 17, 2020, father had tested positive for marijuana. As of November 12, 2020, father had not enrolled in any programs. As of September 30, 2020, father had visited son at paternal grandmother's home on three or four occasions. However, his visits then became inconsistent and ceased as of October 20, 2020. On November 8, 2020, paternal grandmother reported father gave her money for son, but father did not enter her home.

The December 2, 2020 report stated father was convicted of driving on a suspended license (a misdemeanor) after a bench warrant had been issued for his arrest for failing to appear on July 20, 2020, for arraignment on the February 7, 2020 violation.

For disposition, son's counsel and the Department asked the juvenile court to remove son from the parents' physical custody and keep him placed with paternal grandmother. Father's counsel urged the court to return son to father's custody, noting there is no longer a risk to son from father's failure to protect; father and mother no longer lived together or had a relationship. Father was currently employed and rented a two-bedroom apartment to provide a safe environment for son. Alternatively, father's counsel requested father be allowed unmonitored or overnight visits. Counsel further requested a modification of the father's case plan to delete the substance abuse rehabilitation program as redundant of the court-ordered

8

12-step program and as unnecessary given the court's dismissal of the b-2 count against father.

Observing son was "a preverbal seven-month-old infant," the juvenile court removed son from both parents' custody after finding clear and convincing evidence of a substantial danger to his physical health, safety, protection, or well-being if returned to the parents' homes. The court also found there were no reasonable means by which son's physical health could be protected without removing him from the parents' custody, and the Department had made reasonable efforts to prevent or eliminate the need for removal and no services were available to prevent removal. The court ordered son to remain placed with paternal grandmother.

The court acknowledged having dismissed count b-2, alleging father's illicit drug use, but advised it could not "rule out completely that there isn't an issue there, just that there was insufficient evidence" of such drug use. The court then ordered father to continue to submit to random or on-demand drug testing, but stated that his case plan would be modified to delete the 12-step and substance abuse rehabilitation program requirements. The court admonished if father missed or failed a drug test, the Department could request the court to reconsider whether a substance abuse program was warranted. The court ordered family reunification services to be provided to the parents and their visits to be monitored, subject to change if they consistently tested negative for drugs. The court set a six-month review hearing for June 2, 2021.

Father timely appealed.

9

## DISCUSSION

Father contends the evidence is insufficient to support the juvenile court's removal order. We disagree.

" 'At the dispositional hearing, a dependent child may not be taken from the physical custody of the parent under section 361 unless the court finds there is clear and convincing evidence there is or would be a substantial danger to the child's physical health, safety, protection, or physical or emotional well-being if returned home, and that there are no reasonable means to protect the child's physical health without removing the child.' " (*In re D.P.* (2020) 44 Cal.App.5th 1058, 1065; accord, *In re G.C.* (2020) 48 Cal.App.5th 257, 264–265; see § 361, subd. (c)(1).) The juvenile court must determine "whether reasonable efforts were made to prevent or to eliminate the need for removal of the minor from his or her home" and "shall state the facts on which the decision to remove the minor is based." (§ 361, subd. (e).)

"In determining whether a child may be safely maintained in the parent's physical custody, the juvenile court may consider the parent's past conduct and current circumstances, and the parent's response to the conditions that gave rise to juvenile court intervention." (*In re D.B.* (2018) 26 Cal.App.5th 320, 332; accord, *In re N.M.* (2011) 197 Cal.App.4th 159, 170.) "A removal order is proper if based on proof of parental inability to provide proper care for the child and proof of a potential detriment to the child if he or she remains with the parent. [Citation.]" (*In re N.M.*, at pp. 169–170; accord, *In re V.L.* (2020) 54 Cal.App.5th 147, 154.)

"When reviewing a finding that a fact has been proved by clear and convincing evidence, the question before the appellate court is whether the record as a whole contains substantial evidence from which a reasonable fact finder could have found it

10

highly probable that the fact was true.  In conducting its review, the court must view the record in the light most favorable to the prevailing party below and give appropriate deference to how the trier of fact may have evaluated the credibility of witnesses, resolved conflicts in the evidence, and drawn reasonable inferences from the evidence." (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1011–1012; accord, *In re V.L., supra,* 54 Cal.App.5th at p. 155 ["*O.B.* is controlling in dependency cases"].)

Here, there is substantial evidence supporting the juvenile court's removal order for father having failed to protect son.  The record shows father was aware of mother's drug abuse, yet he did not seek custody of son, instead moving out of the family home and leaving behind his infant son.

Father contends the evidence was insufficient to support the juvenile court's finding that no reasonable means existed to prevent removal.  Father insists that because he was under Department supervision and living apart from mother, he could have been given custody of son and received family maintenance services.  As a result, father urges, "any risk to [son] was substantially diminished."  Father further faults the court for focusing on his "*possible* drug use."  Father argues son's removal could have been avoided so long as his continued physical custody of son was conditioned on remaining in paternal grandmother's home and having negative drug tests.  Finally, father asserts the court failed to comply with section 361, subdivision (e), which requires it to " 'state the facts on which the decision to remove is based.' "

Father's arguments are unpersuasive.  First, father's claim that, short of removal, the juvenile court could have ordered that he could remain in paternal grandmother's home unless he tested

positive for drugs was the same order imposed at the detention hearing.  Father repeatedly resisted that order up to the disposition hearing.  Because father failed to comply with the court-ordered drug testing, there were no reasonable alternatives to removal.

Further, father ignores the logical implication of his multiple missing drug tests along with the evidence of his prior drug use.  Common sense suggests a parent who consistently refuses to submit to drug testing without an adequate explanation does so because the parent knows the result will reveal substance abuse.  (*In re Caden C.* (2021) 11 Cal.5th 614, 637; *In re Christopher R.* (2014) 225 Cal.App.4th 1210, 1217 [each missed drug test is properly considered the equivalent of a positive test].)  In these circumstances, the juvenile court could have been reasonably concerned about father's sobriety, concluding he had unresolved issues about his drug use and lacked insight into how it could substantially harm his seven-month-old son, thereby justifying removal.  " 'The parent need not be dangerous and the minor need not have been actually harmed before removal is appropriate.  The focus of the statute is on averting harm to the child.' " (*In re N.M.*, *supra*, 197 Cal.App.4th at pp. 169–170; accord, *In re V.L., supra,* 54 Cal.App.5th at p. 154.)

As for father's claim the juvenile court failed to state sufficient facts supporting removal as mandated by section 361, subdivision (e), father did not interpose an objection on this ground.  " '[A] reviewing court ordinarily will not consider a challenge to a ruling if an objection could have been but was not made in the trial court.  [Citation.]  The purpose of this rule is to encourage parties to bring errors to the attention of the trial

12

court, so that they may be corrected.  [Citation.]' " (*In re Rebecca S.* (2010) 181 Cal.App.4th 1310, 1313, quoting *In re S.B.* (2004) 32 Cal.4th 1287, 1293.)  Although we have discretion to consider father's argument, we decline to do so because a timely objection would have easily permitted the court to state the requisite findings; and as we have determined, no means short of removal would have adequately protected son.

Father's reliance on Justice Menetrez's dissenting opinion in *In re G.C., supra,* 48 Cal.App.5th at pages 272–278, is misplaced.  In concluding there was insufficient evidence to support removal in that case, Justice Menetrez noted that the record showed "[b]y the time of the jurisdiction and disposition hearings, all of the immediate risks had been addressed." (*Id.* at p. 273.)  Here, in contrast, father neither explained his missed drug tests nor apparently realized their significance as endangering son's safety.  Son's risk had thus not been resolved as of the disposition hearing.

**DISPOSITION**

The juvenile court's disposition order is affirmed.

NOT TO BE PUBLISHED.


LUI, P. J.

We concur:


ASHMANN-GERST, J.


CHAVEZ, J.