Filed 4/25/22 In re V.S. CA2/5

**N/OT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re V.S., Person Coming Under Juvenile Court Law. | B313813 |
| ——————————————— LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. 18CCJP07389A) |
| Plaintiff and Respondent, | |
| v. | |
| J.S., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Stacy Wiese, Judge. Affirmed.

Daniel G. Rooney, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and Kimberly Roura, Deputy County Counsel, for Plaintiff and Respondent.

———————————————

***INTRODUCTION***

Father appeals from the juvenile court's orders (1) sustaining a Welfare and Institutions Code section 342 supplemental petition as to his twelve-year-old son, (2) removing son from his custody, and (3) terminating jurisdiction with a family law order granting joint legal custody, sole physical custody to mother, and unmonitored visits to father.[1]

Father engaged in criminal activities throughout the dependency case, was often absent from the home, thrusted childcare responsibilities on other family members without notice, and was incarcerated at the time jurisdiction was terminated. Father does not dispute these facts but argues he was able to provide supervision and protection for son, and son was not at substantial risk of serious physical harm in his care. Accordingly, he asserts insufficient evidence supports the jurisdiction order and he should have been granted joint physical custody. We affirm.

***FACTUAL AND PROCEDURAL BACKGROUND***

***1.      Initial Jurisdiction Based on Mother's Conduct***

On November 16, 2018, the Los Angeles Department of Children and Family Services (DCFS) filed a petition on behalf of then-nine-year-old son under section 300, subdivisions (a) and (b)(1), alleging that son was at risk of harm due to domestic violence between mother and her husband. (Father and mother were no longer in a relationship; the husband is not related to

---

[1]      All further undesignated statutory references are to the Welfare and Institutions Code.

2

son.)  At the time, son had been living with mother and her husband, and had sporadic visits with father.[2]

Because of the domestic violence concerns, on November 19, 2018, the court detained son from mother, placed him with father, and granted mother visitation.

At a February 8, 2019 adjudication hearing, mother pled no contest to an amended section 300 petition.  The juvenile court removed son from mother and placed him with father, who was nonoffending.  The court ordered father to complete parenting classes, family preservation services, and a fatherhood program.  The court ordered individual counseling, tutoring, and conjoint counseling for son (if recommended by son's therapist).  The court ordered father not to drive son without a valid driver's license.  Mother's separate case plan included several programs and monitored visits.  Father was not to be the monitor.

## 2.  *Problems While Son Was in Father's Care*

During son's two-year placement with father, two issues became apparent:  (a) father had failed to address son's educational and mental health needs despite resources offered by DCFS, and (b) father had placed son's safety and welfare in jeopardy by father's frequent absence from the home without making adequate arrangements for son.  We describe the facts related to each issue in turn.  We do not provide detail about mother's reunification with son as it does not affect our analysis.[3]

---

[2]     Sometimes father would tell mother he was on his way to pick up son but would not show up.  Father had a history of going months without seeing son.

[3]     Neither mother nor son is a party to this appeal.

3

*a.     Father's Failure to Address Son's Educational and*
        *Mental Health Needs*

Although father initially participated in services, his commitment waned throughout 2019 and ultimately ceased in the fall of that year.  He missed almost all of the family preservation appointments, which led to the termination of family preservation services in December 2019.

By the fall, father had also stopped taking son to therapy appointments, which were intended to address son's trauma when he was removed from mother's home.  Even though the court had ordered father to enroll son in a tutoring program to address his poor school performance and father had been offered specific tutoring services for son, father failed to enroll son in tutoring.  DCFS repeatedly told father to obtain a referral from son's pediatrician for an Individualized Education Program assessment to assist son in obtaining educational services, but father failed to do so.  Son was regularly absent from school such that father had to meet with the district attorney to discuss his failure to ensure school attendance.  In February 2021, the school reported that son's biggest issues were lack of parental support and poor attendance.

*b.     Placing Son's Safety and Welfare in Jeopardy*

Father and son lived in the paternal grandmother's home with father and paternal uncle.  Throughout the pendency of the dependency proceedings, son was insistent that he wanted to return to mother's home.  Son felt particularly uncomfortable in the presence of father's girlfriend.  In April 2019, father vandalized the girlfriend's car in the school parking lot while

father was waiting to pick up son.[4]  Son left the school building in time to witness his father's arrest.

On July 2, 2019, at the end of a DCFS visit at father's home, son discretely handed the social worker a letter.  He wrote: "My dad leaves with his girlfriend all the time . . . he hits me a lot in front of his girlfriend and her kids . . . his girlfriend's son hit me with a broom but my dad didn't do anything."  Son wrote that mother would never leave him home with a grandparent to see a romantic partner.  In the letter he stated that mother took care of him and mother and his stepdad never hit him.  DCFS investigated but concluded that the situation had stabilized because father said he was no longer in contact with the girlfriend and father was participating in services.  Son wrote a second letter the following month, this time to the dependency court judge.  He asked the court to allow him to return to mother's home and stated that mother "doesn't hit me or make . . . me feel bad."

DCFS's initial assessment of stability was at a minimum premature – father in fact continued to see the girlfriend.  He often left son in the care of mother or the maternal grandmother during the day and overnight.  (At this point in time, son was not authorized to reside in mother's home.)  Father initially said he left the child with family members because he was looking for a job and participating in court-ordered services.  Father continued to be unemployed and had stopped engaging in services; yet he continued to leave son regularly with others.

Mother reported that at times, father dropped son off at her home without any warning – son would just appear at her door.  Son likewise reported that father regularly left him with mother

---

[4]     The charges were dismissed after the girlfriend failed to appear in court.

5

or grandparents, lied about his whereabouts, and was infrequently around. Son explained that father would say he was going to the store, but then would be gone for hours. Father would leave, and "I would end up falling asleep . . . when I woke up he still wasn't home." Son reported that father often left him to see the girlfriend and reiterated he did not feel safe when the girlfriend was around.

Throughout the dependency case, father engaged in criminal activity. In addition to the 2019 vandalism arrest at the school grounds, he was arrested for carjacking in November 2020, vehicle theft in December 2020, domestic violence in February 2021, robbery in February 2021, and vehicle theft in March 2021. On three separate occasions in February and March 2021, police stopped father in stolen vehicles, twice when he was driving. In the third, father was a passenger in a stolen vehicle, which was stopped following a high speed chase. At the time, the car was in his possession. On March 22, 2021, law enforcement arrested father for robbery and incarcerated him. Father later told DCFS that when he was arrested, he had made plans for son to remain in mother's care until father was released.

On April 14, 2021, father consented in writing to transfer custody of son to mother.

### 3. *Section 342 Petition*

On April 16, 2021, DCFS filed a subsequent petition under section 342, alleging that, under section 300, subdivision (b)(1), father was unable to provide ongoing care and supervision for son because of father's recent criminal activities. It stated that the lack of ongoing supervision and failure to provide son with basic life necessities endangered son's physical health and safety, and

6

placed son at risk of serious physical harm and danger.[5]  The petition alleged that on April 14, 2021, father gave consent for son to be removed from father's custody.

On June 30, 2021, the juvenile court held a hearing on the section 342 petition.  Although still incarcerated, father appeared and indicated to the court he was about to be released from custody and placed into a program.  The court admitted the DCFS reports and exhibits.  Father's counsel argued that son was not present when father engaged in criminal activities, and there was no serious risk of harm to son.  Counsel asserted that father should not lose custody because he was incarcerated.

Counsel for both DCFS and son asked the court to sustain the petition and place son in mother's custody with father having monitored visitation.

The court sustained the petition.  The court agreed that "just because somebody is incarcerated doesn't mean their children should be removed from them.  Unfortunately, we have a lot more here, and we have a lot from not only [son], who is 12, but also from the mom."  The court stated father "would leave [son] alone for hours of the night, and [son] indicated at one point he did not feel safe with the father when [the girlfriend] was around."  The court explained, "To just drop the child off at mom's house when mom didn't have custody of the child or to just leave the child at the paternal . . . or maternal grandmother's house and state 'I'll be back; I'm going to look for a job,' or 'I'm going to the store,' and then hours would go by and he wouldn't return— that is somebody who is putting the child at risk, not taking proper care for this child."

---

[5]    The petition also alleged that father's mental and emotional problems endangered son.  The trial court dismissed that count.

7

The juvenile court terminated jurisdiction with a family court order that provided joint legal custody, sole physical custody to mother, and unmonitored visits for father for at least three hours per week. The court ordered father to complete 10 parenting classes, and stated father could go to family court to seek joint physical custody following completion of the classes. The court found by clear and convincing evidence that it was reasonable and necessary to remove son from father and that there were no services available that could provide for son's safety short of removal. Removal was necessary "because of the father's failure to make an appropriate plan for the minor."

Father filed a timely notice of appeal.

### DISCUSSION

Father argues that neither the order sustaining the section 342 petition nor the order removing son from father's custody was supported by substantial evidence.

### 1. Substantial Evidence Supports the Court's Decision to Sustain the Section 342 Petition

Section 342 authorizes the filing of a subsequent petition that alleges new facts or circumstances such that the child is a person described by section 300. (§ 342, subd. (a).) Here, the court sustained the section 342 petition pursuant to allegations brought under section 300, subdivision (b)(1).[6]

  a.  *Applicable Law*

Section 300, subdivision (b)(1) provides, in pertinent part, that a child may be declared dependent if "child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of

---

[6] The section 342 petition was the first instance father was alleged to have been offending. The original petition was based on domestic violence between mother and her husband.

8

his or her parent or guardian to adequately supervise or protect the child, or the willful or negligent failure of the child's parent or guardian to adequately supervise or protect the child from the conduct of the custodian with whom the child has been left. . . ." (§ 300, subd. (b)(1).) "A jurisdictional finding under section 300, subdivision (b)(1), requires [the agency] to demonstrate the following three elements by a preponderance of the evidence: (1) neglectful conduct, failure, or inability by the parent; (2) causation; and (3) serious physical harm or illness or a substantial risk of serious physical harm or illness." (*In re L.W.* (2019) 32 Cal.App.5th 840, 848.)

"We review the juvenile court's jurisdictional findings for sufficiency of the evidence. We review the record to determine whether there is any substantial evidence to support the juvenile court's conclusions, and we resolve all conflicts and make all reasonable inferences from the evidence to uphold the court's orders, if possible. However, substantial evidence is not synonymous with any evidence. . . . [W]hile substantial evidence may consist of inferences, such inferences must be a product of logic and reason and must rest on the evidence; inferences that are the result of mere speculation or conjecture cannot support a finding." (*In re Drake M.* (2012) 211 Cal.App.4th 754, 763, italics, internal quotation marks and citations omitted.)

  b.  *Substantial Evidence Supported the Jurisdiction Order*

We conclude substantial evidence supported the trial court's finding of substantial risk that son would suffer serious physical harm if he remained in father's custody. Father frequently left son in the care of family members, lying about his whereabouts and failing to state when he would return. Against court orders, father dropped son off at mother's house and left him there overnight. Mother explained how son showed up at

9

her door without any notice from father. This behavior jeopardized son's safety—there was no certainty that these caregivers were available when son arrived and, in the event of an emergency, father's location and plans were often unknown.

Several times during father's absence, father was committing crimes, for which he was arrested and jailed. Father argues that son was not "even aware" of father's criminal pursuits. Putting aside the relevance of such a claim, it was not even true: son watched the police arrest father for vandalizing the girlfriend's car at son's school. Substantial evidence supports the court finding of a nexus between father's criminal activities and his failure to properly supervise and protect son.

Substantial evidence was also illustrated by father's failure to follow through with court-ordered parenting services, and his non-compliance with court orders for tutoring and therapy for son.[7]

## 2. *Substantial Evidence Supports the Removal Order*

Under section 361, subdivision (c)(1), a juvenile court may remove a child from a parent's physical custody where it finds, by clear and convincing evidence, that there is a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the child, or there would be if the child were returned home, and there are no reasonable means to protect the child without removal from the parent's physical custody. (§ 361, subd. (c)(1).) We review a removal order for substantial evidence, but given the clear and convincing standard of proof in the trial court, we "must determine whether the record contains substantial evidence from which a reasonable trier of fact could

---

[7] Father asserts that he took son to all therapy sessions. The record indicates father stopped in 2019 and son only resumed therapy in the summer of 2020 with mother's assistance.

find the existence of that fact to be highly probable." (*In re V.L.* (2020) 54 Cal.App.5th 147, 154; see *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 997 ["When reviewing a finding made pursuant to the clear and convincing standard of proof, an appellate court must attune its review for substantial evidence to the heightened degree of certainty required by this standard."].)

We reject out of hand father's assertion that he lost custody of son because he was incarcerated. The trial court plainly stated that was not the basis of its decision, and nothing in the record suggests otherwise.

Father also asserts that because son previously suffered no actual harm in his care and because the court granted him unmonitored visitation, the removal was not supported by substantial evidence. " 'The parent need not be dangerous and the minor need not have been actually harmed before removal is appropriate. The focus of the statute is on averting harm to the child.' " (*In re N.M.* (2011) 197 Cal.App.4th 159, 169-170.) Nor does occasional visitation equate to regular care of a child by a custodial parent. Father's suggestion that if he was good enough to have unmonitored visits then he was good enough for custody lacks logic and is not supported by legal authority or the record. The court reasonably found there was a substantial risk of harm if son had remained in father's custody, given the responsibilities attendant on a custodial parent.

Substantial evidence also existed for the removal order and the order awarding mother sole physical custody for many of the same reasons the trial court's jurisdictional finding was supported by substantial evidence. Father regularly failed to make adequate arrangements for son's care, often engaged in criminal activities (including vandalism in front of son), and prioritized his time alone with the girlfriend over son's welfare.

Significantly, he was deficient in obtaining necessary services for son, so much so that son's schooling suffered.

### *DISPOSITION*

We affirm the juvenile court's orders.


RUBIN, P. J.

WE CONCUR:



MOOR, J.



KIM, J.