Filed 1/20/23  In re N.G. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re N.G., a Person Coming Under the Juvenile Court Law. | |
| | D080966 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| | (Super. Ct. No. EJ4759) |
| Plaintiff and Respondent, | |
| v. | |
| J.G., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Browder A. Willis III, Judge.  Affirmed.

Monica Vogelmann, under appointment by the Court of Appeal, for Defendant and Appellant.

Claudia G. Silva, County Counsel, Caitlin E. Rae, Chief Deputy County Counsel, and Eliza Molk, Deputy County Counsel, for Plaintiff and Respondent.

J.G. (Father) appeals from jurisdiction and disposition orders of the juvenile court concerning his minor child, N.G.  Father does not dispute the court's exercise of jurisdiction over N.G.  His sole contention on appeal is that the court abused its discretion by ordering him to enroll in substance abuse services and classes.  We find no abuse of discretion and affirm the juvenile court's orders.

FACTUAL AND PROCEDURAL BACKGROUND

Father has an extensive history of substance abuse and domestic violence.  Like Father, N.G.'s mother (Mother)[1] also has an extensive history of substance abuse.  Mother used intravenous heroin "off and on" from 2014 to 2019, and has been on methadone since at least June 2020.

N.G. tested positive for methadone at birth.  The San Diego Health and Human Services Agency (the Agency) interviewed the parents while in the hospital.  Mother admitted using heroin at least once during her pregnancy, approximately two months before N.G. was born.  She said she relapsed because she did not have enough methadone during a trip to Virginia, and experienced withdrawal symptoms.  She also tested positive for marijuana around the same time.  Father said he also saw a therapist at Mother's methadone clinic, and the Agency suspected he also used heroin.  But N.G. was born with no health issues, and Mother subsequently tested negative for all substances other than methadone, so the Agency determined there was insufficient evidence that N.G. was at risk of harm.

---

[1]    Mother is not a party to the present appeal and is mentioned only for context.

Mother and Father both tested positive for fentanyl in August 2021, when N.G. was not yet one year old.[2]  Around the same time, Father reported finding Mother using heroin on the bed with N.G. and an unknown male. According to Mother, Father was emotionally and verbally abusive.  She left California and went to live with her mother in Virginia, but returned a couple of months later, after Father apologized and went to counseling.

In March 2022, Mother called law enforcement to report a physical altercation in which Father grabbed her by the hair and placed his fingers inside her mouth to prevent her from screaming, all while she was holding N.G.  Mother sustained a small laceration to her forehead.  Father was arrested that same day.  Mother obtained a temporary restraining order against Father, and agreed to a voluntary safety plan under which Father would not come to the home.

The social worker made an unannounced visit just one week later, and found Mother and Father playing with N.G. in the parking lot of the apartment complex.  Mother claimed Father had just stopped by to drop off a title to the car, but agreed to update the safety plan to include that she and Father would not be together in N.G.'s presence.  Just four days later, the social worker saw Father's truck in the parking lot during another unannounced visit.  Mother denied Father was at the apartment, but the next day, Father admitted he was in the home, and left through a back window when the social worker arrived.  Mother and Father agreed to another safety plan under which N.G. was placed outside the home, in the care of a family friend.

---

[2]  Mother asserted her "clean date" was June 2020, but the methadone clinic reported she tested positive for fentanyl in August 2021.

The Agency asked Mother and Father to drug test, and provided contact information for a substance abuse specialist (SAS) to both parents. On April 20, 2022, the Agency learned that Mother had tested positive for marijuana, amphetamine, methamphetamine, and methadone. Mother said she took "one or two hits from a marijuana blunt from a neighbor's friend" a few days before the drug test, but did not know why she tested positive for methamphetamine. She contacted the SAS the next day, and scheduled an appointment with an outpatient substance abuse treatment program. Father agreed to drug test around the same time, but his results were delayed.

Concerned by Mother and Father's demonstrated lack of cooperation and honesty, the Agency filed a juvenile dependency petition on behalf of N.G. on April 21, 2022. The petition alleged N.G. was exposed to a violent confrontation between Father and Mother, both parents "failed to cooperate with multiple safety plans," and "both parents [had] a history of substance abuse which may impact their functioning, relationship and care of the child." The juvenile court issued a protective warrant that same day. The Agency received Father's drug test results a few days later. Father tested positive for marijuana and methadone, and negative for all other substances. On April 26, the juvenile court found the Agency had made a prima facie showing on the petition, removed N.G. from Mother and Father's care, and authorized the Agency to place N.G. in an approved foster home.

The juvenile court held a contested jurisdiction and disposition hearing on August 2, 2022. In its jurisdiction and disposition report, admitted into evidence at trial, the Agency expressed concern that N.G. was at "substantial risk of suffering physical harm or illness due to the parents' substance abuse and domestic violence." The Agency also submitted a proposed case plan that required each parent to participate in substance abuse treatment as

4

recommended by the SAS, and asked the court, at the hearing, to "order both parents into services according to their case plans." Minor's counsel adopted the Agency's recommendations, and stated: "With regard to [F]ather, I would hope he would engage in domestic violence and substance abuse classes soon. He is not engaged in that. . . . Apparently he feels he does not have a substance abuse problem and he denies all domestic violence issues, which of course is going to be a big road block for him. So I hope he reconsiders that."

Father's counsel asserted there was insufficient evidence to support jurisdiction because there were no witnesses to the alleged domestic violence incident that led to the dependency petition, and no evidence that N.G. was harmed as a result. But, in the event the juvenile court did find jurisdiction, he asked the court to order unsupervised visits for Father. He did not directly address Father's substance abuse, or the Agency's request regarding services.

The juvenile court made a true finding on the petition, found jurisdiction over N.G., and maintained his placement outside the parents' care. The court ordered unsupervised visitation for Mother, but noted Father had not engaged in domestic violence or substance abuse services, and stated, as to Father, "The order will be for supervised visits, but the Agency has discretion to expand to unsupervised when [F]ather enrolls in the minimum substance abuse services." At that point, Father interjected, "I have been testing clean all this time." The court responded, "Testing clean is not in and of itself sufficient. The Court is ordering substance abuse classes and services." Father continued speaking on his own behalf. He asserted he had not been offered an incentive, and stated, "It seems like it's getting reversed." The court responded that reunification with N.G. was the incentive, and reiterated that it was ordering mandated services. In the associated written

5

order, the court ordered Father to enroll in substance abuse services and classes.

Father timely appealed from the juvenile court's written order.

DISCUSSION

Father contends the trial court abused its discretion when it ordered him to enroll in substance abuse treatment services. He asserts there was insufficient evidence that his current methadone treatment program was insufficient, or that N.G. was at risk as a result of his legal use of marijuana and prescribed methadone.

The Agency asserts Father forfeited the argument by failing to object to the proposed substance abuse services at the contested jurisdiction and disposition hearing. The Agency relies primarily on *In re A.E.* (2008) 168 Cal.App.4th 1, in which the appellate court found a father forfeited a similar argument by failing to object when the juvenile court ordered that he participate in parent education classes and counseling. (*Id.* at pp. 3, 5.) But here, Father did attempt to object on his own behalf when the juvenile court stated that he would need to enroll in substance abuse services before moving to unsupervised visits with N.G.

"The purpose of the forfeiture rule is to encourage parties to bring errors to the attention of the juvenile court so that they may be corrected." (*In re Wilford J.* (2005) 131 Cal.App.4th 742, 754.) Although it would have been preferable for Father to raise the argument through counsel, earlier in the proceedings, Father did alert the court to his own objection, and the juvenile court did respond to his comments by providing further explanation for its ruling. We therefore decline to decide the matter based on forfeiture. But we conclude, as the court did in *In re A.E.*, that the order was well within the juvenile court's discretion. (*In re A.E.*, *supra*, 168 Cal.App.4th at p. 4.)

6

After the juvenile court finds jurisdiction under Welfare and Institutions Code[3] section 300, it must determine the appropriate disposition for the child.  (§§ 360, subd. (d), 361, 362; *In re N.M.* (2011) 197 Cal.App.4th 159, 169.)  Under section 362, subdivision (d), "[t]he juvenile court may direct any reasonable orders to the parents or guardians of the child who is the subject of any proceedings under this chapter as the court deems necessary and proper to carry out this section. . . .  That order may include a direction to participate in a counseling or education program, including, but not limited to, a parent education and parenting program operated by a community college, school district, or other appropriate agency designated by the court. . . .  The program in which a parent or guardian is required to participate shall be designed to eliminate those conditions that led to the court's finding that the child is a person described by Section 300."

The juvenile court has broad discretion in selecting the disposition that best serves and protects the child's best interests.  (*In re Nada R.* (2001) 89 Cal.App.4th 1166, 1179; *In re A.E.*, *supra*, 168 Cal.App.4th at p. 4.)  The juvenile court's determination will not be disturbed absent a clear abuse of that discretion.  (*In re A.E.*, at p. 4; *In re Stephanie M.* (1994) 7 Cal.4th 295, 318.)  As Father acknowledges, the juvenile court does not exceed the limits of its discretion unless "its determination is arbitrary, capricious or patently absurd.  The appropriate test is whether the court exceeded the bounds of reason." (*In re L.W.* (2019) 32 Cal. App. 5th 840, 851.)  As the reviewing court, we must accept any inference that supports the juvenile court's ruling,

_____

[3]    Further unspecified statutory references are to the Welfare and Institutions Code.

and may not substitute our own judgment for that of the juvenile court. (*In re Stephanie M.*, at p. 319.)

Here, the juvenile court made a true finding and sustained the juvenile dependency petition, which included an allegation that "both parents [had] a history of substance abuse which may impact their functioning, relationship and care of the child." At the request of the Agency, with concurrence from minor's counsel, the court then ordered Father to enroll in substance abuse services and classes. On the record before us, we cannot say the juvenile court's order was arbitrary, capricious, or outside the bounds of reason.

Father has a documented history of substance abuse and is currently in the early stages of recovery. Father told the Agency he became addicted to prescription drugs after a workplace injury and later switched to "pills off the street." He was caught trying to obtain painkillers without a prescription in 2018. Father reported his heaviest drug use was "daily" and he had used " 'everything and a lot of it.' " He was currently staying sober by using methadone, but he had relapsed at least once before while on methadone, and he complained of methadone withdrawal following his arrest in March 2022. In May 2022, Father reported that he was getting "take-homes" once a week from the methadone clinic. He was using approximately 51 mg of methadone, and hoped to taper down to zero over the following 52 weeks. Father also admitted using marijuana regularly, and consistently tested positive for both methadone and marijuana.

Despite this history, Father was resistant to further evaluation or treatment and was, at times, less than forthcoming with the Agency regarding his sobriety. Father told the Agency he was maintaining his sobriety by going to the methadone clinic and attending NA meetings at a rehabilitation facility in Tijuana. The Agency asked Father to start keeping

8

sign-in sheets for his meetings, and he said he would "figure out" who the social worker could talk to at the rehabilitation facility. But the Agency did not receive any further information or proof of attendance from Father. Father also refused the Agency's request for a hair and nail follicle test, stating he believed it was "unconstitutional." And although he initially said he would agree to substance abuse services, Father never contacted the SAS for an assessment. Father now asserts his current regimen of medically supervised methadone and NA meeting attendance is sufficient, and further services are not warranted. But without Father's cooperation the Agency was unable to confirm Father's participation in or evaluate the adequacy of those programs.

Further, there is at least some evidence that Mother and Father's relationship—and thus, the primary protective issue of domestic violence between them—was impacted by their shared history of substance abuse, as the Agency alleged in the dependency petition. Father admitted he was "new" in his sobriety and that Mother was a trigger for his substance abuse. Yet the social worker found him in or around the family home with Mother, in violation of the voluntary safety plan, twice in the first two weeks after the Agency became involved. Father also demonstrated impulsive and aggressive behavior with law enforcement, the social worker, N.G.'s caregivers, and a health provider for N.G., suggesting a general lack of impulse control.

Considered together, Father's relatively short period of sobriety, resistance to further treatment, impulsive behavior, failure to follow the voluntary safety plan, and admittedly being triggered by Mother's substance use present a reasonable risk that Father will relapse once again. The juvenile court highlighted this risk when it told Father that "testing clean is not in and of itself sufficient." On this record, we cannot conclude the trial

9

court's order that Father enroll in substance abuse services and classes was an abuse of discretion. To the contrary, it appears to be a reasonable order, aimed at protecting N.G.'s safety and best interests.

## DISPOSITION

The orders of the juvenile court are affirmed.

DO, J.

WE CONCUR:


HUFFMAN, Acting P. J.


DATO, J.