Filed 4/21/26  In re A.U. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

| | |
|---|---|
| In re A.U., a Person Coming Under the Juvenile Court Law. | C103669 |
| SACRAMENTO COUNTY DEPARTMENT OF CHILD, FAMILY AND ADULT SERVICES,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>N.K.,<br><br>    Defendant and Appellant. | (Super. Ct. No. JD000343) |

N.K., mother of minor A.U., appeals from the juvenile court's jurisdictional and dispositional orders.  (Welf. & Inst. Code, §§ 300, 361, 395.)[1]  Mother contends (1) there is insufficient evidence to support juvenile court jurisdiction, and (2) there is insufficient evidence to support the juvenile court's order removing the minor from mother's custody, and the juvenile court failed to consider reasonable alternatives to removal.

We conclude (1) the evidence is sufficient to support jurisdiction, and (2) mother's contentions pertaining to removal are moot because the juvenile court has since ordered

---

[1]  Undesignated statutory references are to the Welfare and Institutions Code.

the minor returned to mother's home.[2]  We will affirm the orders and judgment of the juvenile court.

BACKGROUND

In January 2025, the Sacramento County Department of Child, Family and Adult Services (the Department) filed a section 300 petition on behalf of the then 12-year-old minor, alleging that the minor was at risk due to mother's "untreated mental health issue that impairs her ability to provide adequate care, protection and supervision" of the minor.  The petition alleged that despite medical tests and advice to the contrary, mother believed she and the minor were infested with bugs and/or parasites and she had been administering Fenbendazole, a veterinary drug used to treat intestinal worms, to the minor for four months against the advice of her physician.

Examinations of the minor by her physician and at a hospital indicated nothing abnormal.  Nevertheless, in an interview with the minor, the minor reported that mother had administered " 'all sorts of treatments' " with odd names.  Mother gave the minor different things that mother had purchased online.  The minor reported that after taking the treatments, she would feel tired, drained, and more agitated.  On at least some of those occasions, mother administered Fenbendazole that she had purchased on the internet.  The minor said mother gave it to her in a clear capsule and had her take it every day for two to four months as mother said it would kill the bugs.  Mother interrupted the minor's interview and said there were weeks in between during those months when she would not give the minor any medication.  The minor changed her statement to say that she was given the medication once a week.

---

[2]  This court was informed during the pendency of the appeal that the juvenile court had ordered the minor returned to mother's home, and we directed the parties to address whether the subsequent order rendered any of mother's contentions moot.  The parties agreed that a justiciable controversy remains as to mother's challenge to the juvenile court's jurisdiction.

Mother acknowledged that her doctor said not to use the Fenbendazole because it was not approved by the Food and Drug Administration. Mother attributed the minor's irritability and sleep disturbances to hookworms and said she administered the Fenbendazole as a treatment. Mother believed hookworms had been introduced to her home by a dog. The dog tested negative for worms.

Mother's adult daughter said there were concerns about mother's mental health during mother's divorce from the minor's father C.U. According to the adult daughter, mother thought father and his friends were stalking her, that they brought bugs to her home, and that the bugs spread all over. Mother mentioned wanting to see a doctor in Mexico to treat the bugs. The adult daughter said a doctor told mother she most likely had bipolar disorder.

Father reported that mother had struggled with her mental health for as long as he could remember. According to father, when mother was given an antibiotic for an infected finger, she became concerned that the antibiotic would affect the minor because she thought the minor's nails and hair were not growing properly. Mother purchased human fecal matter online to administer to the minor, but father discovered it in the freezer and disposed of it.

Mother denied having prior mental health problems. By the time of the jurisdiction hearing, mother had participated in a mental health assessment and had attended two therapy sessions.

The juvenile court considered the reports filed by the Department and found true the section 300, subdivision (b) allegations in the petition. It adjudged the minor a dependent child of the court and ordered her removed from parental custody. In addition, the juvenile court ordered mother to participate in a mental health assessment, ordered a medical professional to provide a written report to the Department, and set an interim review hearing.

DISCUSSION

I

Mother contends there is insufficient evidence to support juvenile court jurisdiction. She argues there is not enough evidence that the minor was at risk due to her mental health and behavior.

The Department has the burden to prove jurisdiction by a preponderance of the evidence. (§ 355, subd. (a); *In re I.J.* (2013) 56 Cal.4th 766, 773.) We review jurisdictional findings for substantial evidence, reviewing the entire record in the light most favorable to the judgment and drawing all reasonable inferences from the evidence to support the findings and orders of the dependency court. (*Ibid.*) We do not pass on the credibility of witnesses, attempt to resolve conflicts in the evidence, or determine where the weight of the evidence lies. Rather, we draw all reasonable inferences in support of the findings and view the record in the light most favorable to the juvenile court's order. (*Ibid.*)

Although section 300 requires proof that the child is at risk of harm at the time of the jurisdiction hearing, the juvenile court need not wait until a child is injured to assume jurisdiction and take steps necessary to protect the child. (*In re N.M.* (2011) 197 Cal.App.4th 159, 165.) A parent's " '[p]ast conduct may be probative of current conditions' if there is reason to believe that the conduct will continue." (*In re S.O.* (2002) 103 Cal.App.4th 453, 461.)

There is sufficient evidence in the record to support the juvenile court's assumption of jurisdiction pursuant to section 300, subdivision (b), on the grounds that the minor suffered or is at substantial risk of suffering serious physical harm or illness as a result of mother's untreated mental health problems that impair her ability to provide adequate care, protection, and supervision of the minor.

The evidence supports the finding that, despite medical tests and examinations concluding that the minor did not have parasites or bugs requiring treatment, mother

4

administered Fenbendazole to the minor for more than four months. Mother focuses on the lack of evidence that Fenbendazole is toxic or harmful, but the evidence indicates she was administering an unapproved medication to a healthy child against doctor's guidance. In addition, the minor reported that mother administered " 'all sorts of treatments' " and after taking some of them, the minor felt tired, drained, and more agitated. On one occasion, the minor felt lightheaded or dizzy when she stood up.

Mother argues that by the time of the jurisdictional hearing, it had been months since she had administered Fenbendazole to the minor, and after the minor's detention, mother had agreed not to administer Fenbendazole to the minor. She argues the minor was no longer at risk. But mother had no opportunity to give treatments to the minor after she was detained.

Mother had previously been concerned that the minor was impacted by mother's use of an antibiotic. To address the concern, mother purchased human fecal matter and intended to administer it to the minor.

There is sufficient evidence to support the juvenile court's finding that the minor was at substantial risk of serious physical harm or illness as a result of mother's failure or inability to protect or supervise the minor and adequately care for the minor due to mother's mental illness. (§ 300, subdivision (b).)

Mother also contests the allegation that her "untreated mental health issues" place the minor at risk. She relies on her participation in a mental health assessment and two therapy sessions she attended prior to the jurisdiction hearing to argue that her mental health problems were not untreated. But while mother may have started to participate in therapy, her mental health problems remained largely untreated at the time of the hearing.

II

Mother further contends there is insufficient evidence to support the juvenile court's order removing the minor from mother's custody, and the juvenile court failed to consider reasonable alternatives to removal. But the contentions are moot because

5

the minor has since been returned to her home, and we decline to exercise discretion to decide mother's removal challenges even though they are moot. (*In re D.P.* (2023) 14 Cal.5th 266, 287.)

## DISPOSITION

The orders and judgment of the juvenile court are affirmed.


/S/
MAURO, J.

We concur:


/S/
EARL, P. J.


/S/
WISEMAN, J.*

---

\* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.